TENISON v. MARTIN.

1. A variance between the cause of action indorsed on the writ, and the declaration, must be total, and amount to a radical departure, to authorize the court to reject the declaration.
2. M. being entitled under the law of congress to a pre-emption on a certain quarter section of the public land, agrees with T. to abandon his claim and permit M. T. to take possession and make improvements, so as to entitle the latter to a pre-emption, and in consideration of an amount agreed to be paid him, does abandon his claim, and proves a pre-emption for M. T.— *Held*, that in an action by M. against T. for the price of his claim, the contract was void and could not be upheld.

Error to the Circuit Court of Cherokee. Before the Hon. G. W. Lane.

ASSUMPSIT by defendant in error, who was plaintiff below, against Tho. Tenison. The declaration, which contains several counts, avers that the plaintiff, on the 30th March, 1843, being in possession of a certain improvement on the southwest fractional quarter of section, No. 36, in township No. 9, in range No. 10, east, &c. and being entitled to a pre-emption right upon the same, under the provisions of the act of con-

gress, passed the first day of June, 1840, at the request of the defendant, relinquished his pre-emption right to the government of the United States, in consideration of which relinquishment, defendant agreed to pay him $1,000 therefor. The second count avers the promise on part of defendant, to pay one thousand dollars to plaintiff in consideration of the plaintiff's relinquishment of his right of pre-emption to said land to the government, and his valuable improvements made thereon to one Matthew Tenison, the brother of the defendant, and permit him, the said Matthew, to enter upon and improve said land, that he might enter the same under the act of congress of 4th September, 1841—avers a compliance on part of plaintiff, and that said Matthew Tenison took possession, and entered the land in the land office under the said act of congress. The *third* count is a *quantum valebant*, for the pre-emption right relinquished at defendant's request, by the plaintiff, to the government; the *fourth*, a similar count, in consideration of a relinquishment of plaintiff's pre-emption right to the government, and of his improvement to one Matthew Tenison, and consent that he might enter upon the same and improve it, and finally enter it, under the act of 4th September, 1841. The *fifth* count, without averring the plaintiff's right to a pre-emption on the land, declares defendant's indebtedness in consideration of plaintiff's surrender to Matthew Tenison, at defendant's request, of improvements made on the land by plaintiff, and of his consent that Matthew T. might enter the same under the act of 1841. The declaration contains several other special counts, stating the consideration for the promise on part of defendant variously—such as " the abandonment by plaintiff of his possession, so that Matthew Tenison might improve and enter the land ;" " that plaintiff would not assert his right to pre-emption," &c. To each of the counts (twelve in number) a demurrer was interposed, which being overruled by the court, the defendant below pleaded the general issue, with leave to give any matter in evidence which might be specially pleaded.

The proof, which was demurred to, was in substance this : The said quarter section of land had been occupied by Samuel Martin from the year 1833 to 1839 or 1840, when he de-

parted this life, leaving several children. The plaintiff below was the son of said Samuel, and was himself a man of family, and resided on the land. That he agreed with defendant to waive his right to a pre-emption on the land, by becoming a witness to prove the pre-emption of Matthew Tenison, who, by the contract, was to take possession and make improvements, so as to entitle him to a pre-emption under the act of congress of 1841. The proof further showed that plaintiff below did become a witness to prove the pre-emption for M. Tenison, which, by the rules of the land office, amounted to a waiver of his claim ; and after the entry was made, plaintiff, in a conversation with Thomas Tenison, the defendant, stated that he had agreed to take $650 for his claim, but to avoid difficulty, he would take $600. Tenison refused to pay this sum, but stated he had offered a certain amount in money and a certain amount to be secured by note due at Christmas then next, but that he did not then consider that he owed the plaintiff any thing. The land was proven to be worth $1,000, the waiving of the right of pre-emption was shown to have been worth six or seven hundred dollars. There is no proof fixing the exact amount which defendant below was to pay the plaintiff. One witness states, that defendant acknowledged the contract to be that he was to pay one hundred dollars down, and more if he could, and was to give his notes for the remainder due at Christmas, but that he added at the same time (having then made the entry) that he did not consider *then* that he owed the plaintiff any thing. The plaintiff joined in the demurrer to the testimony, which demurrer was overruled, and the damage being uncertain, it was ordered that the jury assess the same, who returned as their verdict that they assessed the damage at the sum of $826 71, whereupon, the court gave judgment for this sum. It also appears by a bill of exceptions taken at the trial, that defendant below moved the court, before demurring to the declaration, to strike out each count in the declaration because of a variance between the several counts and the cause of action as indorsed on the writ. The cause of action so indorsed, is, to recover $1,000, the price agreed to be paid by defendant below, in consideration that the plaintiff would abandon his pre-emption right on the S. W. quarter of Sec.

36, T. 9, R. 10, and permit Matthew Tenison to improve it, and entitle himself to a pre-emption thereon.

The motion to strike out was overruled, and the plaintiff in error now assigns for error— .

1. The overruling his motion to strike out the counts.

2. The overruling the separate demurrers to each count in the declaration.

3. The overruling the demurrer to the testimony.

4. The court erred in rendering final judgment upon the verdict of the jury, who do not appear to have been sworn to assess the damages, &c.

SAMUEL F. RICE, for plaintiff in error, made the following points:

1. Any agreement opposed to public policy, the provisions of a statute or of an act of congress, is void, and cannot be made the ground of a recovery.

2. A promise by the purchaser of public land, (or by a third person,) to pay for improvements made thereon previous to the purchase, will not support an action. Nor will a promise made to a settler on public land, in consideration of his waiving his right of pre-emption thereon, be enforced. Duncan v. Hall, 9 Ala. Rep, 128; Kirksey v. Kirksey, 8 Ala. R. 131; Cromelin v. Minter, et al. 9 Ala. R. 594; Hudson and Hudson v. Milner, 12 Ala. 667.

3. An agreement entered into on Sunday, is void: and so is an agreement for the sale of any interest in land, if not reduced to writing.

4. If the sale of a right of pre-emption is valid, and an action is brought to recover on a verbal promise made in consideration of such sale, the seller cannot recover without proving that he had a right of pre-emption; and in such case, if the counts are special, the proof must show the contract to be such as is set forth in those counts.

5. Even against a party demurring to evidence, it will not be intended, in the absence of all proof, that a plaintiff has proved matters, which the law has made pre-requisites to his right to recover. Woodward v. Harbin, 4 Ala. R. 534.

6. The effect of a joinder in a demurrer to evidence, is to discharge the jury from the further consideration of the issue

submitted in the first instance to them. And in such a case, it is erroneous to leave it to that jury to assess the damages for the plaintiff, unless the record shows that a writ of inquiry was awarded, and that the jury were sworn to assess the damages. Hall v. Browder's adm'r, 4 Howard's (Miss.) R. 224.

L. E. PARSONS, contra.

The proof shows that Martin, by agreement with defendant, abandoned the possession of the S. W. fractional quarter Sec. 36, T. 9, R. 10, and that defendant's brother went into possession, and entered the land in his own name. 1. Is this a sufficient consideration for the promise to pay? 2. Is there any legal prohibition of the agreement, or any thing in the policy of the law which forbids it?

1. Is this a sufficient consideration? This court has held that an agreement to lease the reservation allowed to an Indian under the treaty of Fort Jackson, is a valuable consideration and will support a conveyance; yet the court acknowledge, the moment the reservee abandons the possession, the land becomes the property of the United States, and decide the case upon that state of facts. But they sustain the transaction. James v. Scott, 9 Ala. 579.

In what does that case differ from the one at bar? The reservee had no interest which he could convey, neither had Martin. But the Indian let James into possession, and that was held sufficient. So did Martin let Matthew Tenison into possession. This, then, must be sufficient in this case, if the same rule is recognised, unless there is something in the policy of the law which forbids such a transaction as this. It will be borne in mind that he (Tenison) has acquired a title.

2. Does the policy of the law forbid it? The facts show that M. Tenison has entered the land. By reference to the acts of congress, it will be seen that no person can enter lands as a pre-emptioner, unless he is a citizen of the United States, twenty-one years of age, has resided four months previous to the first January, 1840, on the land, and is the head of a family.

This court will presume that this proof was all made when he made the entry in the land office; because the register

Tenison v. Martin.

and receiver constitute a court for the purpose of deciding all these questions—and their action will not be inquired into in a collateral proceeding.

Matthew Tenison, then, must have been one of that class of persons, which was to be benefited by the operation of the pre-emption laws, or he could not have entered the land in his own name. The only restriction upon the settler is contained in the act of June 22, 1838, which prescribes an oath that he shall take before claiming the benefits of this law.

This oath, it will be seen, only prevents him from entering for another directly or indirectly, &c. &c.

There is nothing in the acts of congress which forbids the party who is in possession to leave it generally, without consideration, or with the purpose of letting another of the same class of persons enter, who will be able to assert a pre-emption in his own name, when he is in possession. Act June 1, 1840—June 22, 1838—May 29, 1830—June 19, 1834—Jan. 23, 1832.

It has been the practice to recognize these transfers by the general land office, and even the assignment of the certificate of entry. The instructions of the department gave the form for the assignment; and this court recognized them. 2 Por. 148, and Falkner v. Jones and Leith, 12 Ala. 165.

If this were an attempt to convey a right of pre-emption, so that one might enter who never could be permitted to enter lands, by reason of his not possessing the requisite qualifications, there would be some degree of foundation for the argument. But that is not this case.

Martin merely abandoned the possession. He did not undertake to convey any thing to Tenison. The latter made his entry on his own qualifications alone.

Upon the question of consideration see 9 Ala. 579; 1 Sug. Vend. 6 Am. ed. p. 10; Eng. ed. 142, note; also top page 148, note 1; also 104, § 14.

The court will presume the jury were sworn in support of the record, especially as the parties were in court, and made no objection.

CHILTON, J.—In ex parte Ryan, 9 Ala. R. 90, it is said, the act of 1807, (Clay's Dig. 321, § 50,) which directs the

courts in which any cause is depending, "at any time to permit either of the parties to amend any defect in the process, or pleadings, upon such conditions as the said courts, respectively, shall in their discretion, and by their rules, prescribe," being a beneficial enactment and promotive of the remedy, should be liberally expounded, and that the authority thus generally conferred is not to be limited to cases where there is something by which to amend apparent on the record. It is not permitted that the plaintiff should declare for a cause of action entirely variant from that indorsed on the writ. In such case, the court on motion would reject the declaration. Wharton v. Franks, 9 Por. Rep. 232; Sexton v. Rone, 7 Ala. Rep. 829. But to justify this, the departure must be total, and amount to a radical variance. If there be any variance in the case at bar between the indorsement and counts, it is of such character as might be amended, but we think, each count is sufficiently indicated by the indorsement, and that the court very properly overruled the motion to reject them.

2. The demurrers to the declaration and the proof, involve the same inquiry, to wit, whether, under the allegations and proof, the action of the plaintiff below can be sustained. By the act of congress of the 29th May, 1830, granting pre-emption rights to settlers on the public lands, it is provided "that all assignments and transfers of the right of pre-emption given by this act, prior to the issuance of patents, shall be null and void." See U. S. Stat. at Large, vol. 4, p. 421, § 3. By an act passed the 23d January, 1832, supplementary to the above, it was provided that persons who had purchased under the act of 1830 might assign and transfer their certificates of purchase or final receipts, and that patents might issue to the person to whom the same might be transferred. The act of May, 1830, which seems to be the basis of the general legislation of congress upon the subject of pre-emptions, was revived, without material alteration, by the subsequent acts of 14th July, 1832, and 19th June, 1834, but by the act of 22d June, 1838, a new regulation is introduced, by which the person making the entry, or claiming the benefit of the act, before he was entitled to a patent, after complying with the provisions of the act, was required to make

an oath before some person authorized to administer the same, which oath, with the certificate of the person administering it, shall be filed with the register of the proper land office, when the land is applied for, and by him sent to the office of the commissioner of public lands, "that he entered upon the land which he claims in his own right, and exclusively for his own use and benefit, and that he has not directly or indirectly made any contract or agreement in any way or manner, with any person or persons whatever, by which the title which he might acquire from the United States, should inure to the use or benefit of any one except himself, or to convey or transfer the title to said land which he might acquire to any other person or persons whatever, at any subsequent time." It is further provided, "that if such person, claiming the benefit of this law as aforesaid, shall swear falsely, he shall be subject to all the pains and penalties for perjury, forfeit the money which he may have paid for the land, and any grant or conveyance which he may have made in pursuance of such agreement or contract, as aforesaid, shall be void, except in the hands of a purchaser in good faith, for a valuable consideration, without notice. See Stat. at Large, 5 vol. 251. The subsequent act, passed June 1, 1840, continues in force the act of 1836, " with the same exceptions, whether general or special, and subject to all the limitations and conditions, contained in said act, and subject also to some explanatory provisions declared in the act of 1840. Ib. 382. The act under which the plaintiff in error entered the land, passed September 4, 1841, (Stat. at Large, vol. 5, 456, § 12 and 13) declares "all assignments and transfers of the right thereby secured before the issuance of the patent null and void," and prescribes an oath, containing, with additional provisions, the substance of the affidavit required by the act of 1838. I have been thus particular in referring to all the enactments bearing upon this case, in order to ascertain whether the contract, disclosed by the proof and stated in the declaration, can be sustained. That contract simplified, amounts to this: the defendant in error, having as a bounty from the government, a right to enter a tract of land worth $1,000, at the price of $200, in consideration of a stipulated compensation, agrees to waive that right in favor

Tenison v. Martin.

of another, and agrees further to become a witness to prove his vendee's right to enter, thereby estopping himself from afterwards claiming the land. The objects of the national legislature in the enactment of pre-emption laws, doubtless were to compensate the pioneer for his privations attendant upon his early settlement in a new country, in tendering him a permanent home at an under value, by which means also the country becomes settled, and the sale of the public lands is facilitated. It is further evident by the whole scope of legislation upon this subject, that congress designed, as far as possible, to discourage speculation in this description of titles. Persons are not allowed to avail themselves twice of the benefit of the act. They must not own 320 acres of land in any state or territory of the United States, nor shall they be entitled to this right if their settlement and improvement were made, that they might sell the land on speculation. See act of 4th Sept. 1841; Stat. at Large, vol. 5, 456.

These considerations are persuasive to show the design of the acts, and as indicating the objects to be accomplished by the restrictions imposed upon transfers. If the plaintiff in error had purchased the right which the defendant claimed under his improvement and occupancy, under an agreement that the latter should make the entry in his *own name, but for the use and benefit of plaintiff*, it would not be contended for a moment that such contract could be upheld. It would come within the very letter of the inhibition contained in the oath required. Shall he be permitted to do indirectly, what the law prohibits him from doing directly? He may avail himself of the munificence of the government in procuring him a home, but he is not allowed to speculate on its bounty. Were such true, he might enter as often as he improved and settled a place. He might not make the entry in his own name, but which is equivalent, he shares all the profits of an entry which, as a matter of form, another makes instead of himself. The case of the Ex'rs of Hudson v. Milner, decided by this court at the last term, is so analagous in principle to this case, that I must confess I can perceive no material difference. In that case, Milner having obtained $100 from Hudson, agreed if he did not refund it by the time the land office was opened for entries, or Hud-

son should desire to make his entry upon a quarter section upon which both he and Milner were entitled to pre-emption, then Milner was not to assert his claim, and Hudson was to pay him whatever sum over and above the $100 which the neighbors should say was just. Hudson made the entry, and Milner sought to recover what had been adjudged by their neighbors to be a just compensation. The court say, "this is evidently a contract for the sale of the pre-emption. The mode the parties adopted to carry it into execution, is wholly unimportant." It is insisted by defendant's counsel that it is the practice of the government, and which has been recognized by this court in McElyea v. Hayter, 2 Porter's R. 148, to regard the transfers of certificates of pre-emption entries as obligatory. This has been permitted by virtue of the act of 23d January, 1832, authorizing assignments of entries made under the act of 1830, and the revival of the latter act was construed as reviving the enabling act of 23d January, 1832. But no case has been found, and we apprehend none exists, where assignments or sales of pre-emption rights *before the entry was made* in the land office, has been upheld. In the case of McElyea v. Hayter, the court held, that an authority to make title when the patent should issue to lands entered under the pre-emption act of 1830, was void, as it was a circuitous mode of evading the act of Congress. James v. Scott, 9 Ala. Rep. 579, relied upon by the counsel for the defendant in error, is unlike the present case. That was a lease during the life of the reservee of his reservation under the treaty of Fort Jackson. By the terms of the treaty, a sale of the land worked a forfeiture of it to the government, but the court, waiving the question as to whether the reservee might well make the lease, held, that as the lessee had taken and held the undisturbed possession of the land, he could not treat the contract as a nullity by which he acquired it. In the transaction, no principle of public policy was contravened; besides, it was not an action to enforce a contract forbidden by law. We think therefore that the contract set up by the plaintiff, as the same is shown to exist by the proof, cannot be supported. This is doubtless a hard case upon the defendant in error, but it is our duty to declare the law, and not to compromit its settled provisions

by adapting our decisions to the exigencies of particular cases. What we have said is decisive of the case, and it is unnecessary to examine the other points argued at the bar.

Let the judgment be reversed and the cause remanded.