# THE ALABAMA LIFE INSURANCE AND TRUST COMPANY vs. PETTWAY.

1. A trustee in a deed, who is also the principal beneficiary, may come into equity, on behalf of himself and the other beneficiaries of the deed, to prevent a sale of the property under executions and attachments at law, to foreclose the deed, and to settle the conflicting liens. Such a bill is properly filed, not only as preventing a multiplicity of suits, and removing a cloud upon the title to the property, but also on the well settled ground that a mortgagee, although he has a power of sale, may foreclose in equity.

2. One of the debts secured by a deed of trust was described as a balance paid by the beneficiary on a certain note on which he was surety for the grantor, while the evidence showed that the debt was paid, in part, with notes of a third person borrowed by the grantor, in payment of which he gave his bond, with the beneficiary as his surety,—that the grantor was insolvent,—that the loan was made on the credit of the beneficiary, and that the latter had paid a portion of the note, and had given his individual security for the balance : Held, that it was competent for the parties, as between themselves, to change their relations to each other on the debt, and to treat it as the debt of the surety ; and that their relation to each other with respect to the debt did not affect the question of fraud in the execution of the deed.

3. Evidence held sufficient (in this case) to establish the existence and bona fides of a certain debt secured by a deed of trust, where the validity of the deed was contested on the ground of fraud.

4. Where a deed of trust is attacked for fraud, a general creditor of the grantor, whose debt is not secured by the deed, is a competent witness to prove the bona fides of any secured debt, although he may have another security.

5. Proof of a debt corresponding in every respect, except as to amount, with one of the secured debts, may be received for the purpose of showing a misdescription of the debt, and thus repelling the inference of fraud, although it may not be sufficient to authorize a foreclosure as to the secured debt.

6. If a debtor, in failing circumstances, executes a deed of trust to secure some of his creditors, and, with the intent of saving a portion of the property to himself, fails to disclose the indebtedness of one of the secured creditors to him on another transaction, this would be a fraud upon his creditors, as against any one who, by assenting to the intent, participated in the fraud.

7. If a creditor, knowing the insolvency of his debtor, takes from him a deed of trust to secure the entire amount of his debt, without disclosing the fact that he is indebted to the grantor on another transaction not noticed in the deed, this would be a strong circumstance against him, and would probably be conclusive if the indemnity provided was fully adequate to the secured debts ; but, if the mortgaged property was insufficient to pay the secured debts, by an amount exceeding the creditor's indebtedness to the grantor, or if there were other debts or liabilities not provided for by the deed, exceeding the creditor's said indebtedness, this would be sufficient to rebut every inference of fraud or dishonesty.

8. Courts will not strive to force conclusions of fraud; if the circumstances relied on to sustain the allegation of fraud, are fairly susceptible of an honest intent, that construction will be placed upon them.

Error to the Chancery Court of Wilcox.

Heard before the Hon. J. W. Lesesne.

This bill was filed by Mark H. Pettway, for himself and the other secured creditors, to foreclose a deed of trust executed to him as trustee by Charles J. Gee and Sterling H. Gee, and to enjoin certain proceedings at law on the part of other creditors who were not secured. It alleges the execution and existence of the deed, the fact that the property had been levied on, before the law day of the deed, under certain attachments and executions against the grantors, and the danger which would ensue to the trustee's claims from the dispersion of the property; it alleges, further, that a portion of the property conveyed by the deed had been sold under executions which exerted a prior lien to the deed, and that the balance unsold was hardly sufficient to pay the secured debts. The creditors who had levied attachments and executions on the property, are made defendants to the bill; and the prayer is, that the personal property unsold may be disposed of as waste and perishable property, that the proceedings at law may be enjoined, that the conflicting claims upon the property may be settled, that the deed of trust may be established as a lien on the property, and that the whole subject-matter may be administered under the directions of the court.

The answers attack the deed on the ground of fraud, alleging that it was made to hinder, delay and defraud the creditors of the grantors. The answer of the Alabama Life Insurance and Trust Company states, that, in the fall of 1845, said Sterling H. Gee assigned forty negroes to said Pettway, then being in North Carolina; "that said assignment was made to complainant for the purpose of indemnifying him against the payment of any debts for which he was bound as surety for said Sterling;" that said Sterling, in 1845, conveyed about $20,000 worth of property to one Perkins, as trustee, to secure complainant against any liability incurred on account of said Sterling; "that complainant is amply indemnified, in North Carolina, against any loss or liability on account of said Sterling and

Charles J. Gee, by the property thus delivered to Perkins and to Pettway; that the property in North Carolina is ample for the security of Pettway; that the Alabama debts were contracted on the faith of the Alabama property."

This general statement of the allegations of the bill and answers is sufficient to show the legal points presented by the case. The Chancellor sustained the validity of the deed of trust, and his decree is now assigned for error.

A. F. HOPKINS, for plaintiffs in error:

Equity law requires that every fact essential to the right of the plaintiff to maintain his bill and obtain relief, must be stated in the bill; for no facts are in issue unless charged in the bill, and no proof can be offered of facts not in the bill; nor can relief be granted for matters not charged in the bill, although they may be apparent from other parts of the pleadings and the evidence.—Story's Eq. Pl. § 257; 1 Daniels' Chan. Pl. and Prac. 377, and note 2. The rule is settled, that an admission in a defendant's answer shall be of no avail to the plaintiff, unless the matter of it be put in issue by the bill.—Story's Eq. Pl. § 264; Gresley's Eq. Ev. 22, 23. The consequence of the rule is, that although there is a clear case for relief on the face of the answer, consisting of a defendant's admission, the plaintiff can take no benefit from it, because the bill does not charge the fact which the admission contains; and the plaintiff is frequently obliged to ask leave to amend his bill. The course for the plaintiff to take in such a case, is to obtain leave to amend his bill, by charging in it the case admitted in the answer.—Story's Eq. Pl. § 264; Gresley's Eq. Ev. 22, 23. The Supreme Court of the United States has decided frequently "that no admission in an answer can, under any circumstances, lay a foundation for relief unless it be substantially set-forth."—11 Peters 229, 249. In the case of Harrison et al. v. Nixon, the same court decided, that if an answer contained a statement ommitted in the bill, but necessary to the relief sought by the plaintiff, the allegation in the answer could not supply the want of it in the bill, as every bill must contain in itself sufficient matters of fact, per se, to maintain the case of the plaintiff.—9 Peters 502, 503. The Supreme Court of Alabama has been governed invariably by the same rule. The

court said, in the case of Goodwin v. Lyon, 4 Porter 306, 307, however strong may be the proof of a complainant, and however clear his title to the aid of the court, it is wholly immaterial ; if the allegations of his bill are not in harmony with his testimony, it cannot be regarded by the court.  In the case of McKinley v. Irvine, 693, 694, the court said : " Nothing is in issue, except such facts as are charged in the bill ; and all proof of facts not stated, either generally or circumstantially, must be regarded as without the issue, and consequently irrelevant, and a decree on such facts cannot be supported."—13 Ala. R. 487, 488, 489.   The authority of the rule in the English Court of Chancery is established by the references which have already been made to Gresley's Eq. Ev. and 1 Daniels' Pl. and Prac. ; and the necessity to amend a bill for the purpose of obtaining relief, by inserting matter in it admitted in the answer, but omitted in the original bill, is shown also by 1 Scho. & Lef. R. 1, 9.  An admission in an answer is but evidence, and differs from the testimony of a witness in this only : that it is conclusive, because it acts as an estoppel to the introduction of conflicting evidence.—Gresley's Eq. Ev. 9, 10, and note F.— As an admission is evidence only, it is inadmissible, unless the fact to be proved by the admission be alleged in the bill, and thus put in issue, as allegations must be, to render the evidence competent that is relied upon to prove them.   An answer to a bill is required and enforced with a view to furnish an admission of the case made by the bill, either in aid of proof, or to supply the want of it.—Wigram on Discovery, p. 1, § 2.

The bill alleges that the debts charged to be due to the beneficiaries in the deed, are *bona fide*.  This allegation is denied by each of the contesting creditors, and each of them alleges in his answer that the deed is fraudulent.  The issue thus made involves the character of the deed ; and it was competent under it for the creditors, who are defendants to the bill, to prove that Pettway and the Gees provided by the deed for a larger amount than was due from the grantors to Pettway or any other beneficiary.  The evidence of Perkins and others, which proves that Pettway was indebted to S. H. Gee in the sum of $15,000, for the negroes he purchased of Gee, that Pettway gave his bond for this sum to S. H. Gee, which was unpaid when Perkins made his deposition, that Pettway concealed the existence of

this bond and the debt of which the bond was the evidence, and treated the indebtedness of the Gees to him as though he owed nothing for the negroes: this evidence was entitled to the effect which the court allowed to it in the opinion that was delivered in this case at the last term of the Supreme Court.

It is understood that the decree heretofore rendered in this case, and which was set aside to allow a re-hearing of the cause, was set aside upon the ground that the answers of the creditors stated that S. H. Gee, in the fall or winter of 1845, assigned about forty negroes to Pettway, other than those conveyed to him by the deed of mortgage, to indemnify him against the payment of any debt for which he was surety for S. H. Gee, and that the indemnity was given to him before the mortgage was made in this State. Such a statement, in all the answers, would be entitled to no effect on the case. If, without such a statement in the answers, Pettway would have no right to relief, the statement, if contained in the answers, would be ineffectual to give him any claim to relief, because the fact contained in the statement is not in issue, as it is not alleged in the bill!— That such a statement in the answers must be disregarded by the court, the authorities which have been already referred to conclusively show. But it would be a mistake to conclude that each creditor's answer contains such a statement. There is no such a statement in either answer of the defendants whose names follow: Bacon and two others, who unite with him in the same answer, A. B. Cooper, E. O. Johnson, B. R. Hogan, Arthur Fant and Joseph Van Devoot, guardian of an infant defendant. Their answers are what the court understood the answers to be when the opinion in the case was formed and delivered. If the deed be fraudulent in part, as to Pettway only, it is wholly void as to him, and he can take no benefit from it against any creditor.—14 Ala. R. 557, 559. An infant is not bound by admissions in his answers.—1 Daniels' Ch. Pl. 214.

A deed securing two notes to the same person, one payable to him as a guardian, and the other as an individual, the former founded on a valuable, and the other without consideration, is wholly fraudulent and void.—14 Ala. 557, 559. A deed fraudulent as to any of the contesting creditors is void, and being void leaves the property as to which it is void in the same condition in which it would be if the deed had not been made, and

therefore liable to all the contesting creditors of the fraudulent grantors.

The bill puts nothing in issue as to the deed of trust made by S. H. Gee to Perkins in North Carolina—states nothing from which the amount of the debts provided for by that deed or the value of the property conveyed by it can be ascertained. The bill alleges nothing in relation to the debt alleged to be due to Wm. R. Clarke by S. H. Gee and Pettway, and therefore puts nothing in issue in relation to that debt. Pettway avoided in his bill all statements relating to the deed made in North Carolina to Perkins, the bond of $15,000 for the negroes, and the note in favor of Wm. R. Clarke, as he avoided also all questions to his witnesses in relation to the same matters. The answers of the creditors deny that the debts provided for in the mortgage to Pettway were due, and allege that the debts paid by Pettway as security of the Gees, were paid with the funds of the Gees or one of them. The testimony offered by the contesting creditors, that S. H. Gee borrowed $15,000 in notes of Wm. R. Clarke, payable to him, and that Pettway paid debts, for which he was surety for Gee, with them, is competent, and proves the fraud of which they were guilty. This evidence proves the truth of the denial in the answers of the *bona fides* of the debts claimed by Pettway and provided for by the mortgage.

The bill does not state the consideration of the note with the name of S. H. Gee as maker, for $2,617 53, payable to Pettway one day after date, and bearing date the 20th of August, 1843; nor does any evidence prove there was a consideration for the note. The only evidence relating to this point is in the depositions of Pritchett, Perkins and Falconer. Each of these witnesses testified he knew nothing of the consideration of the note, but that the signature to the note was in the handwriting of S. H. Gee, and that the signature of said Gee to the settlement referred to by Pritchett, was in Gee's handwriting.— Pritchett is the owner of two notes secured by mortgage to Pettway, due when he made his deposition. He is, therefore, an incompetent witness, and his testimony must be disregarded by the court.—1 Ala. 582; 4 Port. 252. For the right of the parties to have incompetent testimony disregarded by the court, see their agreement, of record. The other two depositions

prove only that the signature to the note is in the hand-writing of S. H. Gee. As no consideration for this note is proved, the attempt to secure the payment of it to Pettway, makes the deed fraudulent and void as to him. Neither the note, the deed, nor the recitals in it, are any evidence against the contesting creditors, that S. H. Gee was indebted in any sum upon the note to Pettway.—4 Ala. 261, 263, 264; 10 *ib.* 137; 5 *ib.* 1, 12; 3 Porter 401, 404, 405; 4 Randolph 282; 14 Ala. 557.

Another note, payable on its face to Pettway as executor of John Powell, one day after date, and bearing date the 16th of November, 1839, with interest from the 28th of May, 1839, for $1,717 14, with the name of S. H. Gee as maker, is provided for in the mortgage as a debt due to Pettway. This note is liable to all the objections made to the note for $2,617 53, and others in addition. The bill does not state what the consideration of the note was, and the testimony does not prove a consideration. The authorities relied upon against the validity of this note are the same that are cited against the note for $2,617 53. It is not alleged in the bill that the note for $1,716 14, described in schedule B, a part of the mortgage, was intended for the note for $1,616 14, the only note produced that is payable to Pettway as executor of Powell, that it was in existence and unpaid at the date of the mortgage, and that by mistake it was described as a note for $1,717 14. No evidence relates to the note described in the mortgage, and none tends to prove that the note for $1,616 14 was intended to be secured by the deed, or that it was then in existence. As there is no allegation in the bill that the latter note was intended to be secured by the provisions in the deed for the payment of a note for $1,717 14, evidence of such an allegation would be incompetent.—10 Wheaton 189. Relief cannot be granted on the note described, because the existence of such a note is not proved, nor even pretended now. Nor can it be granted upon the ground that the note for $1,616 14 was intended by the mortgagors and mortgagee by the description of a note for $1,717 14, as the bill contains no such allegation. Relief cannot be granted on matter not charged in the bill, although the same may appear from the evidence.— 13 Ala. 693; 10 Wheaton 189. Without evidence to prove that the note for $1,616 14, was a debt intended to be secured, it is not within the provisions of

the deed, as it is not identified with the mortgage nor other proof.—1 Ala. 710 ; 12 *ib.* 187.

The legal conclusion from the evidence is, that the Gees and Pettway have provided in the deed for the payment of two notes, the largest of which is not a *bona fide* debt, because there was no consideration for it ; and the other for $1,717 14, they do not pretend now exists.   As there is no proof that these two notes, or the one for $1,616 14, were *bona fide* debts, the deed is wholly fraudulent as to Pettway, upon the authority of Tatum v. Hunter & Thomas, 14 Ala. 557, and of Moore & Paine v. Tarlton & Paine, 3 Ala. 444.   The amount due to Pettway was falsely stated in the deed at a larger amount than the evidence proves was due to him, as it was in each of the two cases last cited.—2 Ala. 314, 18 ; 1 Story's Com. on Eq. §§ 353, 369.

The next question I shall discuss is, which of the two makers, S. H. Gee or Pettway, was the surety in the note payable to Wm. R. Clarke ?   The testimony furnishes a clear and indisputable answer to this question.   That S. H. Gee was the principal, and Pettway the surety, is ascertained in every mode which can be resorted to, to attain a correct conclusion on the subject.   Does the borrower usually make the application by himself or his agent for the loan ?   If this be a characteristic of the borrower, it is fixed by the evidence in this case upon Gee.   He applied to Clarke for the loan, and gave Pettway as his surety.   Joint makers of a note, that does not express that either is a surety, are both principals, and, except as between themselves, neither can defend a suit on the note, upon the ground that he is a surety, and that indulgence had been granted without his consent by the holder to the maker, who was the principal, unless he can prove also that the holder knew, when he gave the indulgence, that the defendant was a surety only. —5 Ala. 455.   If indulgence had been granted without Pettway's consent by Clarke to S. H. Gee, Pettway could have successfully defended a suit upon the note, as he could have proved clearly by the terms of the note itself, and otherwise, that he was a surety only.   The statement in a note, that one of two joint makers is principal and the other surety, is intended to afford written proof in the contract itself of the relation between the joint makers, and between each of them and the

payee. It is immaterial which of them was at first intended to be the principal; the note as made is conclusive proof of what the final agreement was, as to which maker was principal, and which was surety, and parol evidence is not competent to contradict the written proof of the relationship between the parties. —1 Ala. 164; 10 Ala. 548; 2 Ala. 280; 5 Porter 50; 3 Cond. Eng. Chan. 786, 738. If there be a mistake in the note in this respect, it could be corrected only upon a proper bill in equity for the purpose, putting the mistake in issue.

If the maker, who appears from the terms of the note to be the principal, should attempt to avoid payment, on the ground that he was a surety, and as such had been discharged by indulgence granted without his consent by the holder to the principal, the defence could not be made, because the evidence would not be admissible. The rights of third persons would be affected by such evidence. It would surely be a mistake to conclude that Gee and Pettway acted as if Pettway were the principal. Gee applied for and obtained the loan upon giving Pettway as his surety. It is expressly stated in the note itself that Pettway is the surety. This witness thinks S. H. Gee took the borrowed notes from him, and knows the said Gee was shortly afterwards in the witness' part of the country, collecting the notes the witness lent. Wm. M. Clarke, a son-in-law of Pettway, testified that, in the fall of 1845, Wm. R. Clarke transferred bonds to the amount of about $15,000, either to S. H. Gee or Pettway, that this witness saw these bonds in the possession of Pettway a few days afterwards. That Pettway had some of the borrowed bonds some time after the loan, is consistent with the fact proved by S. Whitaker, that Pettway placed in the hands of Whitaker, for collection, a considerable amount of the borrowed bonds, stating that they were the property of S. H. Gee, and requiring Whitaker to give his receipt for them, as the property of Gee, which Whitaker did. That all the claims mentioned in the receipt were collected, except a small one against Wooten.—Depositions of Whitaker, Wm. H. Edwards, N. W. Long. But if Clarke, the son-in-law of Pettway, intended to state that he saw all the borrowed bonds in the hands of Pettway, his evidence in this respect would contradict the testimony of Wm. R. Clarke, that S. H. Gee was in his part of the coun-

try shortly after the loan, collecting the borrowed bonds or notes. Wm. M. Clarke testified, also, that Pettway obtained from him about $2,000 in notes, for the purpose of paying them to Edmonds, because Pettway said he had not a sufficient amount of the bonds borrowed of Wm. R. Clarke that would suit Edmonds. As Pettway paid to Edmonds the 5th November, 1845, $3,000 in money, his own note for $722, and $3,750 93 in the receipt of Whitaker, for the bonds belonging to S. H. Gee, which he had borrowed of Wm. R. Clarke, it is certain that no notes borrowed by Pettway of his son-in-law, Wm. Clarke, were paid by Pettway to Edmonds. While Wm. Clarke, the son-in-law, does not pretend that he has paid any debt for Pettway as surety for the Gees, and testifies that he had lent $2000 in bonds to Pettway; James H. Walker testifies, that Wm. M. Clarke had paid with Pettway's means between $15,000 to $20,000 of the debts of the Gees for which Pettway was surety!! If the fact be so, how happened it that Wm. M. Clarke did not remember, what it would have been so important to the interests of Pettway to prove, while he recollected that he lent Pettway, his father-in-law, $2,000 in notes, which Pettway told him he wanted to use in payment of the bond to Edmonds. Wm. M. Clarke proved that the bonds or notes were borrowed by S. H. Gee of William R. Clarke. The language of this witness, in speaking of the bonds, is, "for which bonds said Clarke took the note of S. H. Gee as principal, and M. H. Pettway as surety, and that said Clarke told the witness that he considered it M. H. Pettway's debt, as he looked upon S. H. Gee as being broke, and that he said Clarke refused to lend said bonds unless Pettway would become surety."

Immediately after the execution of the note for $15,000 to Wm. R. Clarke, Pettway alone entered into an arrangement with Clarke, the payee, to which S. H. Gee was no party, nor does it appear that he knew of it, that on the interest of the note being paid annually, suit should not be brought for the principal till after five years, provided the surety is deemed solvent. The security referred to was clearly Pettway. This agreement between the payee and Pettway, the surety, was endorsed on the note, and signed by Wm. R. Clarke. Clarke required additional security for the payment of the note, after

Pettway had removed or was about to remove to Alabama, and obtained it.—Deposition of Wm. R. Clarke.

Was there ever a case, in which it was more conclusively proved, which of two joint makers of a note was the surety, than it is proved in this case, that Pettway was the surety in the note, in favor of Clarke? The fact is proved by the application of Gee for the loan of the bonds; by the evidence of Wm. Clarke, that Wm. R. Clarke refused to make the loan, unless Pettway would become S. H. Gee's surety; by the written statement in the note itself, that Pettway was the surety; by the testimony that Gee exercised ownership over the borrowed bond in calling upon the obligors for the purpose of collecting the debts; and the acts of Pettway himself, as agent of Gee, in telling Whitaker, that the bonds he (Pettway) placed in the hands of Whitaker for collection, belonged to S. H. Gee, and taking from Whitaker a receipt for them, as the property of Gee. To all this proof, add the evidence afforded by the endorsement made by the payee on the note for $15,000; that no suit should be brought till after five years, &c.; and the evidence of Clarke, the payee, that to this arrangement he and Pettway were the only parties; thus treating Pettway as the surety, by an agreement with him, to which Gee was no party, for the extension of the time of the payment of the note. Each of the enumerated acts by the three parties respectively, was an act that treated Pettway as the surety.— The assent of Pettway to the extension of the time for payment, was necessary to preserve his liability as surety, but wholly unnecessary if he were the principal. Against the clear conclusion that Pettway was the surety, his only reliance consists of the declarations, as testified to, of the payee, that in the negotiation he regarded Pettway as the solvent debtor; that the bonds were lent on the credit of Pettway; and that the payee refused to lend the bonds unless Pettway would become the surety. These declarations are perfectly consistent with the fact, so conclusively proved, that Pettway was the surety. That Pettway had no indemnity for his liability to Clarke, would not weaken the conclusion that he was the surety. It would be but another illustration of the wisdom of the advice of Solomon against suretyship.

If a creditor of Gee had sued him by attachment, and sum-

moned Pettway as a garnishee before he paid the receipt of Whitaker to Edmonds, on the ground that Pettway had in his hands effects belonging to H. S. Gee; and Pettway had answered that he was the borrower and owner of the bonds mentioned in that receipt, is it possible, upon the testimony in this case, that the issue between the creditor and Pettway could be determined in favor of Pettway? The contesting creditors have proved that Pettway, with the property of Gee, has paid debts of Gee for which Pettway was surety, and attempted to continue them as existing debts due to him, by falsely stating in the deed that he paid them as surety with his own effects. They seek an appropriate remedy for his use of the property of Gee as his own to the prejudice of creditors, and are as well entitled to success as a creditor would be, in the case I have supposed, who resorted to an attachment and garnishment against Pettway as the debtor of Gee. In a case of garnishment, in which an issue should be made between a creditor of Gee and Pettway, upon a denial of the latter that he was indebted to Gee, and on the trial, a witness for the creditor should prove that he held for collection, as the agent of Gee, a note payable to him by Pettway, and produced the note, would parol evidence on the part of Pettway be competent to prove that the note was payable to Gee by mistake, instead of to a third person? and what would be the weight, morally, of such evidence, against testimony in addition to that afforded by the note, that Pettway had said the note was properly made by him payable to Gee, had placed it himself in the hands of the agent, and taken his receipt for it as the property of Gee?

Of the $7,473 89 stated in schedule B of the mortgage to have been paid as the balance due on the note in favor of B. Edmonds by Pettway as surety, he paid the 5th November, 1845, $3,750 93, with bonds which H. S. Gee borrowed of Wm. R. Clarke by the transfer of the receipt for bonds for this amount thus borrowed, which Pettway himself put into the hands of Whitaker, and required of him a receipt for them as the property of S. H. Gee.

The note of Nicholas M. Long, for $3,600, which is provided for by the mortgage as a debt Pettway had paid as a surety, was paid by him in October, 1845, with interest from the 18th July, 1842, in a note Long had made to Wm. R. Clarke. The

latter note exceeded in amount the note which Pettway paid as surety, and the difference Long paid to Pettway.

There is no consideration proved for the note described in schedule C of the mortgage as a note payable to the executors of Sterling Johnson, for about $3,700, or $3,800. The debts to which the attention of the court has been particularly called, as debts for which no consideration has been proved, amount to about $8,800; and the debts due to Edmonds and Long, paid by Pettway with notes belonging to S. H. Gee, that he borrowed of Wm. R. Clarke, amount to about $7,350, exclusive of the amount of interest that was paid on the same notes. The two last mentioned sums, exceeding in amount $16,150, for the greater part of which there is no proof of consideration, and for the balance, abundant evidence to prove that it was paid in bonds or notes that belonged to S. H. Gee, are fraudulently secured by the deed upon a false statement in the deed and bill that the sums of which the $8,800 consist were *bona fide* debts, and that the other sums of $7,350 had been paid by Pettway with his own funds. These falsehoods, intended by the mortgagors and Pettway to deceive creditors, and prevent them from taking steps to collect the debts due to them from the Gees, render the deed fraudulent and void.— 2 Scho. & Lef. 501; 3 Munf. R. 521, 533, 534, in addition to the authorities already cited. The pretended settlement between Pettway and S. H. Gee, affords internal evidence that it was fraudulently manufactured by the parties.

Upon the argument of this case at the bar, at the June term, 1852, the counsel for Pettway contended that he was entitled to retain his good fortune in being indebted to S. H. Gee in the sum of $15,000 for the negroes purchased in North Carolina, and thus save himself harmless for his liability as surety to Wm. H. Clarke. But as he became the surety without any contract for indemnity, and the payment of the note in favor of Clarke was extended five years, upon request of Pettway, immediately after it was made, and the bond for $15,000 for the purchase of the negroes, was not made for two or three months after the note in favor of Clarke was executed, Pettway, when he became the surety on the note to Clarke, could not have looked to this indebtedness on the bond for $15,000 for indemnity against his liability as surety to Clarke. Pettway

had paid the part which has been mentioned of the note due to Edmonds, in the receipt of Whitaker, and had paid also the note due Long, in a note made by Long to Wm. R. Clarke, that had been borrowed by S. H. Gee before the bond of $15,000 was made, or the negroes had been sold to Pettway, and had caused the note to Edmonds and the note to Long to be assigned to his son-in-law, William M. Clarke, for the use of Pettway.

But if Pettway had been the principal in the note to Clarke, and the bond for $15,000 from Pettway to S. H. Gee had been left unpaid, that Pettway, might have in his hands funds belonging to Gee to meet his liability incurred for the sole benefit of Gee to William R. Clarke, the false statement in the mortgage, that the debts to Edmonds and to Long had been paid by Pettway with his own means, and still existed against Gee as debts in favor of Pettway, the surety, who had discharged them, would render the deed fraudulent and void as to all the debts stated in the deed to be due to Pettway. With the sum of $15,000 of Gees' money in the hands of Pettway due for the negroes, and the note in favor of Clarke not payable for nearly five years, the bond and note both made before the mortgage to Pettway, the statement in the mortgage deed would be most false, that Pettway paid the two notes with bonds he had borrowed of Wm. R. Clarke, or with his own funds derived from any other source. The pretext could be resorted to only for the purpose of deceiving the creditors of Gee, by fraudulently concealing the fact, that for the borrowed notes he used in paying the two notes, he received payment by taking a credit to an equal amount upon his bond for $15,000, the purchase money of the negroes, and making the false impression, that Gee owed him the amount of the two debts he, Pettway, had paid as surety, which were therefore justly secured by the deed of mortgage. If, therefore, Pettway was entitled by an agreement with Gee, made when he purchased the negroes, to hold the $15,000, the price of them, as an indemnity for his liability on his note to Clarke, he and the mortgagors have been guilty of a fraud, in treating the debts that were once due to Edmonds and Long as existing debts in favor of Pettway. If there were such an agreement, he would be entitled upon it, as against Gee, to a credit on the bond for $15,000 to an amount

equal to the aggregate of the two sums he paid to Edmonds and Long; and therefore the concealment of the indebtedness on the bond for $15,000, and the false statement in the mortgage and bill that these two debts still exist, but are due to Pettway, because he had paid them as surety, and with his own funds, would make the deed fraudulent and void as to him. In either of these aspects of the case, the deed is fraudulent; but, in the true aspect of it, is still more grossly and injuriously fraud-ulent. The bond for $15,000 existed at the date of the mort-gage deed of 22d November, 1845, as well as a note for $140, due from Pettway to S. H. Gee.

The aggregate of these two sums should have been deducted, if the indebtedness of the Gees to Pettway exceeded the aggre-gate amount from their indebtedness to him, and the balance only secured to him by the deed. The concealment of the sum he owed, upon the bond for $15,000 and his own note for $140, proves that he and the mortgagors intended to deceive the cred-itors of Gees, by making upon them the false impression that the Gees were indebted to him in a sum exceeding $15,000 more than would have appeared in his favor, if the existence of these two debts due from himself had been disclosed and made known to the creditors. Upon the same principle, the notes borrowed by Gee from Clarke and used by Pettway, in paying as a surety the two notes that have been mentioned, should have been treated as paid by Gee himself, because they were paid with his property; but treated as they were, as if they had been paid by Pettway, as a surety, and with his own funds, the deed secured to Pettway, as a consequence of this additional fraud, the aggregate amounts of what he paid in the borrowed notes to Edmonds and Long.

According to Pettway's own statement to Perkins, he was under no obligation to Gee or any of the creditors to pay the $15,000, the price of the negroes, or any part of the sum to any creditor of Gee. The meaning of what he said to the witness, was, that he had the right to do with the $15,000 what he pleased. His exemption from obligation to pay the price of the thirty-six negroes, made the deed fraudulent and void as to him.—2 Johns. Ch. R. 35, 44.

JOHN A. CAMPBELL, contra :

The bill was filed by the trustee in the deed, in behalf of

himself and the other secured creditors, to maintain its hold upon the property conveyed, against other creditors who claimed adversely to the deed, and were attempting to subject the property under executions and attachments at law. Its object was, to prevent the multiplicity of suits, to prevent the sacrifice of the property at sales under conflicting and contested titles, to ascertain the priority of liens among the creditors, to foreclose the mortgage, and to administer a trust fund under the directions of the Chancery Court. The bill was well filed on several distinct grounds.—9 Ala. 705; 1 Hill's Ch. R. 41 ; 3 Monroe 570 ; 2 Johns. Ch. 525 ; 6 Monroe 194 ; 6 Leigh 587 ; 12 Ala. 410.

The defendants who answered the bill, are composed of two classes: those who claim liens prior to the deed, and therefore paramount; and those who contest the deed as false and therefore void. The sums collected out of the trust fund, on account of prior liens arising from judgments or attachments, amount to $24,175 77. The defendants who impeach the deed, allege that it was made to hinder and delay the creditors of the Gees ; that it was executed with circumstances of great secrecy ; that its existence was concealed until after the adjournment of the Circuit Court of Wilcox ; that none of the preferred creditors but Pettway knew of its existence ; and that it was not designed to be operative, if certain suits, then pending against the Gees in the Circuit Court, could have been continued. The issues presented by the pleadings, on examination, are but two, viz., the *bona fides* of the debts from the Gees to Pettway, and the sufficiency of his security for his liabilities.

The prior liens on the property, and the debts which are preferred to Pettway's amount to $40,075 77. The debts which Pettway holds against the Gees ($29,907), and his liabilities for them as surety (16,300), amount to $46,207. The sales by the sheriff and register amount to $69,339 00. It will be seen, therefore, that Pettway was not fully secured, but, on the contrary, that only about sixty per cent. could be realized from the sales ; Pettway will be a creditor for more than $15,000, when all the provisions of the deed of trust have been fulfilled.

Besides the debts secured by the Alabama deed, Pettway

was liable for the Gees, in November, 1845, on other debts amounting to $22,520 ; and his only security for these debts was the slaves which had been transferred to him, and which the answer treats as an assignment to him for security. After the filing of this bill, and during Pettway's absence in Alabama, Sterling Gee made a deed of trust to Perkins, providing for these last debts, together with others, the whole amounting to about $30,000 ; but this property, according to the testimony of Perkins, did not provide for more than $15,000 of the debts described in the deed. It is obvious, the execution of this deed cannot enter into the consideration of the question of the fairness of the Alabama deed ; for the reason, that it was executed nearly six months after the Alabam deed, and after all the litigation under the Alabama deed had commenced. The facts show, that Pettway was under liabilities, at the date of the Alabama deed, to the amount of more than $25,000, which were unprovided for by that deed, and for which he had security to the amount of $15,000 only, by the transfer to him of the thirty-six negroes, by bill of sale in November, 1845. The Perkins deed was designed to furnish a security for these North Carolina debts, which were but imperfectly secured, or not secured at all.

The assignment of the thirty-six negroes, for which Pettway had a bill of sale, is brought before the court by the answers. The only equity claimed from the transaction is, that, whereas the debts in Alabama were contracted by the Gees on the faith of the property here, and Pettway had an adequate indemnity in his hands in North Carolina, he should be turned over to that, rather than to the property embraced in the Alabama deed. There is no charge that this assignment was made upon a secret trust in favor of the Gees; there is no charge that it was clandestine, or designed to defraud ; there is no charge that it was unduly withheld from the knowledge of the other creditors of the Gees ; there is no charge that there were not existing liabilites for which such an assignment might be made. Pettway could not properly have introduced this transaction into the bill : he was not the sole beneficiary of the deed, nor the sole plaintiff in the case; the introduction of a general accounting

with the Gees, and a general settlement of the North
Carolina trusts and debts, with protection to the Alabama
trust estate, would have subjected the bill to the charge of
multifariousness.  The defendants were entitled to bring the
facts to light, and they did so; not as evidence of fraud, but
with a view of exonerating the Alabama property, and
turning Pettway on the North Carolina property for
satisfaction.  This aspect of the case was met by the proof
of the North Carolina liabilities on the part of Pettway,
not comprised in the Alabama deed, sufficient to absorb that
property.  The Alabama deed did not secure Pettway, as
above shown, within $15,000 and upwards of the debts and
liabilities which are acknowledged and proved.  The
introduction of this debt in reference to the slaves in the deed,
would not have altered the situation of any creditor under
that deed to the amount of one dollar.

GOLDTHWAITE, J.—The circumstances under which the
bill in the present case originated, were as follows :

Sterling H. Gee, who resided in Halifax County, North
Carolina, and Charles J. Gee, who lived in Wilcox County,
Alabama, were partners in buying and selling slaves, and also
in planting.  They did not use a firm name, but the business
was usually conducted in the individual name of the partner
who transacted the business.  They became embarrassed in
the fall of 1845, and on the 22d November of that year made a
deed of trust, of specific property in Alabama, for the purpose
of securing certain debts enumerated therein.  The complainant,
Pettway, was the largest beneficiary and the trustee in this
deed, although there were other creditors preferred to him ;
and the right of the trustee to sell the property was dependent
upon a default to happen in January, 1846.

Before the default, the property was levied on by creditors,
some of whom had liens paramount to those of the trustee, and
some of a subsequent date.  Pettway then filed his bill, as
trustee, on behalf of himself and the other beneficiaries in the
deed, to protect the property from pursuit ; setting out the
deed of trust, the danger to which the property was exposed
from a sale under levies from attaching and execution creditors;
and praying an injunction (which was granted), and also a

foreclosure under the direction of the court.   A supplemental bill was filed, the object of which was to bring in other creditors, to suspend legal proceedings against the property, and to settle the liens.

The creditors who had levied upon the property, contest the deed as fraudulent ; and this is the only substantial ground of defence ; for, if the deed is valid, it is clear that the bill is well filed, not only on the ground of preventing a multiplicity of suits, and removing a cloud upon the title of the property, but also upon the well settled ground that a mortgagee, although he has the power to sell, may yet come into a court of chancery to foreclose.   The mere power to sell cannot deprive equity of its jurisdiction, especially when the power is embarrassed by other claimants to the property or its proceeds.

Regarding the question of fraud in the execution of the deed, as the only one presented upon the record, we proceed to the consideration of that question.

One of the debts enumerated in the deed, and which it was intended to secure, is described as the balance due on a note payable to Benjamin Edmonds, made by the Gees as principal, and Pettway as surety, which had been paid by the latter ; and it is insisted, that the evidence shows that this amount, instead of being paid by Pettway, was in fact paid with the funds and effects of the Gees.   The testimony proves that the amount was paid, in part, by notes which were borrowed of William R. Clarke by Sterling H. Gee, and that in payment of the notes he gave a bond signed by himself as principal and Pettway as surety.   As between the parties to the transaction, it assumed the shape of a loan to Gee, upon the security of Pettway ; but it was competent for Gee and Pettway to change their relation to each other.   The recital in the note does not affect them (Pollard v. Stanton, 5 Ala. 451) ; and upon the issue of fraud we must look to the intent of the parties.   Here, in addition to the facts we have stated, the evidence shows that the loan was made on the credit of Pettway,—that Gee is insolvent,—that Pettway has paid a portion of the note given to Clarke, and has given individual security for the balance. The note to Clarke is treated, both by the Gees and Pettway, as the debt of the latter, by including it in the mortgage as his; and whether it be considered as an actual debt of Pettway, or a

liability which he was under for the Gees, can, when viewed in relation to the question of fraud, make no difference; it being obvious, that it was the intention of the parties to provide for it in either shape. We think, however, that the evidence shows a change of position, as between Gee and Pettway, as to this note, and so far as they are concerned, it may properly be regarded as the debt of the latter.

It is also insisted, on the part of the plaintiffs in error, that a note, included in the mortgage as a debt to Pettway by note of S. H. Gee, for $2617 53, is not proved. This note is dated in August, 1843; and the signature is proved by the witness Pritchett to be that of S. H. Gee. The same witness, also, proves that seven negroes, a horse, mule, and two carts, the property of Pettway, were delivered by him to Gee before that time in the same year, which were carried by the witness, by the directions of Gee, to Alabama, and there delivered to him. He also proves the hire of a negro by Pettway to Gee the same year; and these circumstances, taken in connection with the peculiar relations which the parties are shown to have occupied towards each other, we regard sufficient. It is urged, however, that the witness who proves these facts is incompetent from interest, and that under the agreement which it appears from the record was entered into by the counsel, to the effect that illegal evidence should not be considered by the court, this evidence should be wholly disregarded. We agree, that if the witness is interested, his evidence goes for nothing; but we are unable to perceive that he has any interest in the event of this suit. He states, that he holds two notes upon the Gees, on which there is due about $260; but these notes are not embraced in the mortgage, which it is the object of this suit to foreclose; and although they are in the deed of trust to Perkins, made in April, 1846, this cannot affect his competency, as no debt is secured by that mortgage which is contained in the Alabama deed, to which he occupies the position of a general creditor; and, if interested at all, it is in defeating it.

Objections are also urged, upon the same ground, to two other claims enumerated in the deed; the one referred to as a note to Pettway, as executor of John Powell, for $1717 14, and the other as a note to the executors of Sterling Johnson. The first note is not proved; but a note answering the descrip-

tion in every respect except that it is for $1616 14, is fully established by the evidence; and although it may be that the allegations of the bill are not sufficient to a decree of foreclosure upon the note proved (a point which the deficiency of the mortgaged property to meet the other demands of Pettway, renders it unnecessary to decide), we are satisfied that the evidence was proper, as tending to repel the imputation of fraud which might otherwise arise. The question upon that issue would be, simply, whether the note described in the mortgage was simulated; and if the evidence shows that it was merely misdescribed, it repels every prejudicial inference which might arise if such proof was not made.

The debt due the executors of Sterling Johnson, is fully proved by the witnesses R. B. Price and Wade Johnson. The mortgage, it is true, does not specify the amount of this note with particularity, but the debt to which it refers is clearly established.

The only remaining objection to the validity of the deed, is, the conduct of Pettway in connection with the purchase of the slaves from S. H. Gee. These slaves were thirty-six in number; the purchase was made in North Carolina; the price was $15,000, for the payment of which Pettway gave his bond, which was in the possession of Gee at the date of the mortgage, and during the progress of the suit. The indebtedness of Pettway to Gee is not referred to in the deed of trust, nor does it appear from the bill or the other pleadings in the cause; and the transaction, taken in connection with these facts, is strongly pressed by the plaintiffs in error, to show that the deed was fraudulent as to Pettway. The answers of the Alabama Life Insurance Company, as well as the answers of several others of the defendants below, refer to this transaction, and, without impeaching its integrity, insist upon it as an assignment made by Sterling H. Gee for the benefit of Pettway, with the object of driving him to seek relief from that fund, instead of the indemnity provided by the deed in Alabama. We do not, however, give to this statement the same effect that the counsel for the defendant in error seems to attach to it. It may be, that if Pettway had obtained adequate indemnity in North Carolina, the creditors of the Gees in Alabama might, under some circumstances, have forced him to look to that security, rather than to the fund

provided here; and it was doubtless the object of the defendants to do so, if the transaction referred to should assume that shape. But it must also be remembered, that every answer, by an express allegation, assails the deed for fraud; and if the transaction standing alone, or in connection with other circumstances, sustains this allegation, we are not prepared to say that it could not be used for that purpose. Be this, however, as it may, there are other defendants, claiming adversely to the deed, whose answers impugn its integrity, without referring to this transaction at all; so that, upon these answers, we are forced to a consideration of its influence, either by itself, or in connection with the subsequent conduct of Pettway, precisely the same as we would be obliged to consider any other facts established by the evidence in the case.

We do not understand that it is the object of any of the defendants to impeach this sale. So far as the parties to it were concerned, there is nothing in the evidence to show that it was not perfectly fair and in good faith; the purchase having been made by Pettway with the view of securing himself, either in whole or in part, against the liabilities he was under for the Gees. The argument, on the part of the plaintiffs in error, is, that instead of the mortgage made on the 22d November, 1845, showing the actual amount of the indebtedness of the Gees to Pettway, it in fact showed $15,000 more than was really due, and that this fact, coupled with the failure of the latter to disclose this amount of indebtedness on his part, must be regarded as fraudulent. Upon the law applicable to the question, we entertain no doubt that if the Gees were in a failing condition, and if the object of the conveyance was connected, on the part of the makers, with the intent of saving to themselves any portion of the property embraced by it, it would be fraudulent against creditors, as to any party who, by assenting to the intent, participated in the fraud.—Lee v. White, 7 J. J. Marsh. 525; Bird v. Aikin, Rice's Eq. R. 73; Maples v. Maples, *ib.* 300; Byrd v. Bradley, 2 B. Mon. 239. So, if a creditor should falsely insert in his mortgage a debt larger than was really due, that circumstance, we apprehend, would be conclusive as to a fraudulent intent; because no other motive could reasonably be ascribed to an act of that character. We concede, also, that if Pettway, knowing the insolvency of the

Gees, and being indebted to them in the sum of $15,000, was to take a mortgage securing all the debts due and liabilities he was under for them, without disclosing in the deed the fact of his indebtedness, it would be a strong circumstance against him ; and if the indemnity provided was fully adequate to the debts enumerated in the mortgage, it would probably be conclusive. If, however, it should clearly appear, that the mortgaged property was inadequate to secure the debts provided for, to an extent exceeding the amount of the indebtedness of Pettway ; or if there were other debts or liabilities, not embraced in the mortgage, and exceeding his indebtedness to them, it would then be sufficient, in our opinion, to rebut every inference of fraud or dishonesty. The reasonable presumption, then, would be, that the debt was withheld to provide for his own security, which he had a perfect right to do, although its effect might be to defeat other creditors. What is the meaning of a fraudulent intent in respect to creditors ? It means that the design of the parties was to prevent the property of the debtor from being applied, either in whole or in part, to the payment of his debts (Nicholson v. Leavitt, 4 Sand. Sup. Ct. R. 252) ; and if that was not the object of the parties, the convey- ance is not fraudulent. Suppose the Gees were indebted to Pettway, by other debts than those specified in the mortgage, to a greater amount than the purchase money of the slaves referred to ; and that his design in holding back the debt, was to set it off against the debts he held against them. Would that be fraudulent ? No authority has been cited, and none can be found, which carries the doctrine thus far. Courts will not strain to force conclusions of fraud ; and if the circum- stances relied on to sustain that allegation, are fairly suscepti- ble of an honest intent, that construction should be placed upon them.

In relation to the question we are now considering, we have made a careful examination of the record, and find these results: The debts and liabilities which the mortgage was made to secure, and which are proved by the evidence, were about                                                       $44,400 00
The sales of the mortgage property, made by the sheriff and register, amount to                                     $69,000 00

| | | |
|---|---|---|
| The debts preferred by the mortgage to Pettway's, and the liens paramount to the mortgage, and not embraced in it, amount to about | $39,900 00 | |
| Balance of proceeds of sale, to be applied to the payment of the secured debts, | $29,100 00–$29,100 00 | |
| Amount not secured by mortgage, | | $15,300 00 |
| In addition to this, the evidence establishes that Pettway was liable for other debts of the Gees, not included in the Alabama deed, amounting to upwards of | | $17,000 |

It appears, therefore, clearly, that the security provided for the mortgage executed 22d November, 1845, was insufficient to meet the debts owing to Pettway by the Gees, and the liabilities he was under for them, by upwards of $30,000. Under these circumstances, we cannot say that the keeping back the debt owing by Pettway, for the slaves purchased by him, was evidence of an intent on his part to defraud the creditors of the Gees, but must ascribe it to the more natural motive of securing himself against liabilities which far exceeded that amount. The vice of the former opinion was, in considering the security afforded by the deed of trust in Alabama as affording full indemnity to Pettway, which was a mistake of fact.

If the failure to refer to the debt of $15,000, in the mortgage, cannot be regarded as a fraudulent act, we do not see how the failure to disclose it in the pleadings can be so considered. The object of the suit was, the protection of the trust property, —to settle the rights of creditors claiming under the deed, and those claiming under judgments, executions, and attachments, and to execute the trusts as they were disclosed. To do this, it was entirely unnecessary to set out any other transactions than as to the debts specified in the mortgage ; and if it would have been superfluous to allege it in the bill, the failure to do so affords no evidence whatever of a fraudulent intent. We say nothing in relation to the North Carolina deed of trust ; for the

reason, that it was not executed until some months after the Alabama deed, and the evidence shows that the property included in it, if it had been appropriated to no other debts than the liabilities which it is proved Pettway was under for the Gees, would still, taking into estimation the inadequacy of the other mortgage, have failed to secure Pettway by a sum considerably greater than his debt.

Our conclusion is, upon the whole evidence, that it proves no fraud, so far as Pettway is concerned.

The decree of the Chancellor is affirmed.