## HUDSON AND HUDSON v. MILNER.

1. Two persons, H. and M., being entitled each to enter eighty acres of land, of the same quarter section, made an agreement, by which M. stipulated, that if he did not pay H. $100 which he owed him, by the time he was ready to enter his portion of the land, that then he would permit H. to enter the entire quarter section, H. paying M. the value, to be ascertained by a reference to the neighbors. Held, that this was a contract for the sale of the pre-emption, and being in violation of the act of Congress of June, 1838, granting pre-emption rights to settlers on the public lands, was void.

Appeal from the County Conrt of Cherokee.

Assumpsit by the defendant in error, against the plaintiffs in error, to recover the value of an improvement, or right to the entry of land, under an agreement of the following tenor :

*Ladiga, May* 12, 1840.

It is hereby agreed, between Robert Hudson, and William Milner, that if the foregoing note for one hundred dollars, dated 11th May, 1840, and payable one day after date, for which William Milner is to confess a judgment, at the next county court for Benton county, Ala., is not paid, on or before the time the land office is opened, and the said Hudson is ready to enter his land, before the register, that the said Milner is to suffer the said Hudson to enter the whole quarter on which they both live, and the said Milner will not endeavor to enter himself. And the said Hudson is to pay to the said Milner, whatever the neighbors, to be selected by the parties, say should be paid him, in right and justice, after deducting the said amount of said note for $100 and interest.

It was proved that Milner, and Hudson, settled upon the same quarter section of land, some time before 1838, with their families ; built houses, and resided upon it from their settlement. It was also in evidence, that a judgment was confessed by Milner, as provided for in the agreement, but

that the debt had not been paid. It further appeared, that after the death of Hudson, an arbitration was had between his executors and Milner, who awarded, that the former should pay the latter $170, after deducting a certain amount. This amount was not paid, nor any note executed for it. It further appeared, that the defendants produced the agreement above set out, and applied to the register to enter the quarter section, which he refused to permit, without the consent of Milner, and Milner, on being applied to, to go to the register, and relinquish his pre-emption, excused himself from going, on account of the sickness of his family.

The defendants then produced the receiver's receipt for the purchase money of the quarter section referred to in the agreement, dated April 10th, 1843, acknowledging to have received it from Robert Hudson.

The court, among many other charges given, and refused, charged the jury, that there was a difference between a promise to pay for improvements on the public land, and a promise to pay for the exercise of a privilege the promissor might have enjoyed, and that if the plaintiff forebore from asserting his right, at the instance of defendant's testator, to a pre-emption, the promise was not void, but founded on a good consideration—and refused to charge that a sale of a pre-emption right, before the patent issued, was void. To which the defendants excepted, and which, with other matters, are now assigned as error.

A. J. WALKER, for plaintiff in error.

The relinquishment of a pre-emption right to the general government, whereby another is enabled to hold a pre-emption on the same land, is by indirection a sale of the pre-emption right. There is no other mode by which the pre-emptor can transfer his pre-emption to another. He cannot sell it by the ordinary bargain, sale and delivery, because the government would not recognize the purchaser, as being invested with the rights of the seller. The act of Congress inhibiting the sale of pre-emption rights, must have had direct reference to such circuitous sales. If it had not, it is unmeaning and aimless. The act of Congress authorizing the assignment of the receiver's receipts rather corroborates, (in-

stead of weakening the idea,) that the design of the national legislature through the series of pre-emption acts, was to inhibit sales of pre-emption rights, by indirection, as was attempted in this case. Such contracts are also against the spirit of the pre-emption laws, and against public policy. The tendency of such contracts is, to subject the unsuspecting and poor occupant of the public lands to the machinations and impositions of speculators, and to divert the public domain from its intended purpose of affording a home for the first *settler* and his family, and of making the pioneer a freeholder, and consequently a better citizen. [4 U. S. Statutes at large, 421, 496, 678 ; 5 Ib. 251, 382 ; 2 Pub. Land Laws, instructions and opinions, 601, No. 550 ; 4 Ala. Rep. 731 ; 5 Ib. 467.]

ORMOND, J.—The act of Congress of 22d June, 1838, "to grant pre-emption rights to settlers on the public lands," which merely continued in force other previous acts, having the same object in view, contains the following clause : "Before any person claiming the benefit of this law shall have a patent for the land, which he may claim by having complied with its provisions, he shall make oath before some person authorized by law to administer the same, which oath, with the certificate of the person administering it, shall be filed with the register of the proper land office, where the land is applied for, and by the said register sent to the office of the commissioner of public lands, that he entered upon the land he claims in his own right, and exclusively for his own use and benefit, and that he has not directly, or indirectly, made any agreement, or contract, in any way, or manner, with any person or persons whatever, by which the title which he might acquire from the government of the United States, should enure to the use or benefit of any one except himself, or to convey, or transfer the said lands, or the title which he may acquire to the same, to any other person or persons, at any subsequent time ; and if such person, claiming the benefit of this law as aforesaid, shall swear falsely in the premises, he shall be subject to all the pains and penalties of perjury, forfeit the money which he may have paid for the land, and all right and title to the said land, and any grant or con-

veyance, which he may have made, in pursuance of such a-greement, or contract, as aforesaid, shall be void, except in the hands of a purchaser in good faith, for a valuable consideration, without notice.". [5 Stat. at large, 251.]

It is impossible to mistake the meaning and intent of this law. It forbids the sale of a pre-emption right, until after the patent has issued; and before one can be obtained, in virtue of a pre-emption right, an affidavit was required, the design of which was to prevent the consummation of any contract for the sale of the land previously, declaring not only the contract void, but the title itself a nullity, except in the hands of a *bona fide* purchaser without notice.

These parties were joint occupants of the same quarter section of land, and by the provisions of the pre-emption law, were entitled each to a patent for eighty acres, on the payment of the government price; and by this contract, Milner agreed, that if he did not pay Hudson a debt of $100, which he owed him, when the latter was ready to enter his portion of the land, that then he would permit Hudson to enter the whole quarter section, and would not assert his right to one half of it—Hudson paying the value, to be ascertained by a reference to the neighbors. This is evidently a contract for the sale of the *pre-emption*. The mode the parties adopted to carry it into effect, is wholly unimportant. As a contract by Milner to enter the land in his own name, and then convey it to Hudson, would have been void, the same effect must attach upon this contract, by which the same thing was to be accomplished, by his omitting to assert his right to enter the land. The design of the act of Congress was, to secure as far as possible, a permanent home to the settler, and not to confer this boon upon him for the purpose of speculation. But be the policy of the law what it may, its language is clear, and explicit, and it is our imperative duty to enforce it. The contract here relied on for a recovery, being in direct violation of a statute, cannot be enforced.

This renders it unnecessary to consider the other questions raised upon the record, and argued in this court. Let the judgment be reversed, and the cause remanded.