## IVEY v. NICKS.

1. An innocent holder of a security won at gaming, cannot recover of the indorser who lost it, though the indorsement was made before the security was lost, unless he was induced to take it, by the representations of the indorser.

Error from the Circuit Court of Talladega. Before the Hon. G. W. Stone.

THIS suit was originally commenced in the county court of Talladega, by the plaintiff, against the defendant in error, in assumpsit, upon the indorsement of a due bill.

Upon the trial, a witness proved, that the defendant bet the note sued on, with one Conner, at a game of cards, played by the witness, and Conner. The note was made by one Philips to the defendant, for the payment of $150, and at the time defendant told Conner, he took the note for better, for worse; that he would not indorse it, or be responsible for it. That his name, which was on the back, was not an indorsement, but placed there to distinguish it from the notes of his partner. The plaintiff was not present, and there was no proof that he knew of it. The defendant also produced, and read, the record of his discharge in bankruptcy, but there was no proof

the plaintiff had any notice of the application to be declared a bankrupt.

The only charge of the court necessary to be noticed, is to the effect, that if the plaintiff had no notice of the consideration of the transfer of the note, from the defendant, to Conner, he could recover, though the consideration was gaming, if the plaintiff acquired the note on the faith of the indorsement.

A judgment being rendered against the defendant, he prosecuted a writ to the circuit court, where the judgment of the county court was reversed, and the cause remanded. From that judgment this writ is prosecuted. The assignments of error present for revision, the charge of the judge of the county court.

RICE and MORGAN, for plaintiff in error.

1. Nicks, having entrusted Conner with his blank indorsement, is responsible to a *bona fide* holder of the note who was ignorant of the non-residence of the maker, although Conner may have abused the confidence reposed in him by Nicks. The whole evidence is set out, and discloses a clear liability against Nicks, in favor of Ivey; and even if there should be some inaccuracy or error in the charges and refusals to charge, this court will not reverse, because no injury has been done. Herbert v. Huie, 1 Ala. R. 18.

2. What constituted a *bona fide* holder, was a question either waived by Nicks, or decided by the county court to his satisfaction, in a charge not set out, because not excepted to. The verdict of the jury, under the first charge, ascertains that Ivey acquired the note without notice of gaming consideration, and "on the faith of the indorsement as it appeared on the note." This court will not revise this decision of the jury, and this makes Nicks liable to Ivey, unless the non-residence of the maker was known to Ivey, which is not even pretended by Nicks. 1 Ala. Rep. 18.

3. The conversation between Nicks and Conner cannot affect the plaintiff Ivey, because it was not known to plaintiff, and was no part of the indorsement, or of its consideration. The name of Nicks had been placed on the note before any gaming occurred, and of course the gaming between

Conner and Nicks was not the consideration of the indorsement. Kennedy v. Manship, 1 Ala. Rep. 43. For this reason, as well as for others shown by the record, the gaming between Nicks and Conner, cannot affect Ivey. Ivey "acquired the note on the faith of the indorsement as it appeared on the note," and the indorsement, as it appeared, was made before any gaming occurred, and without reference to any game, "but to distinguish it as his (Nicks's) individual property, from the notes or property of his partner Bowen." This case is not therefore so much to be governed by the law of indorsements, as by the principle, that " where one of two innocent persons (Nicks or Ivey) must sustain a loss, he (that is Nicks) must bear it, who is most in fault." Herbert v. Huie, 1 Ala. R. 18.

4. Ivey took the note, on the faith of the indorsement, and he is entitled to hold it, "discharged from all obligations between the original parties [Nicks and Conner] which do not appear on the note itself, or of which he has no notice." See cases cited, 1 U. S. Dig. 421, § 46; Hinton v. Bank of Columbus, 9 Porter, 463; 1 U. S. Dig. 420, § 32, and cases there cited.

L. E. PARSONS, contra.

1. This indorsement is for a gaming consideration, and is void in the hands of an innocent holder for a valuable consideration. 8 Ala. 138; Metcalf v. Watkins, 1 Porter, 57.

2. There is no averment of diligence to collect the note of the maker. Briston & Roper v. Jones, 1 Ala. 159; Riddle v. Rourke, Ib. 394; Rathbone, use, &c. v. Bradford, Ib. 312.

3. The discharge in bankruptcy also constitutes a good defence to this action, and should have been allowed by the county court.

CHILTON, J.—We think there can be no serious question as to the correctness of the decision of the orphans' court in reversing the judgment of the county court rendered in this cause. The bill of exceptions not only shows that the defendant never did indorse the note, but put his name upon it merely to distinguish it from the joint property of himself and partner, but that it passed from him into the hands of

Conner upon a gaming consideration. Waiving the consideration of the effect of defendant's discharge in bankruptcy upon the liability sought to be enforced against him ; and without considering our statute, which authorizes the defendant to show a want of consideration as against the holder or indorsee of other than commercial paper, it is perfectly clear, that the county court mistook the law in refusing to charge the jury as requested by the defendant, viz : that if the only consideration of the indorsement was a bet or wager at a game of cards, they must find for the defendant.

The statute declares, thall " all promises, agreements, notes, bills, bonds, or other contract, judgment, &c., made, &c., upon any gaming consideration, shall be utterly void, and of no effect, to all intents and purposes whatsoever." Dig. 257, § 1. The indorsement on the note, made upon a gaming consideration is equally void, in the hands of an innocent holder, as it is in the hands of the original indorsee, who wins it, and cannot be enforced against the indorser; for if innocent parties were allowed to recover, the winner would always avoid the statute by transferring the notes.

This construction accords with the whole current of authority, both English and American, and is in conformity to the uniform tenor of the decisions upon the statute of 9 Ann, c. 14. See Manning v. Manning et al. 8 Ala. 138 ; Fenno et al. v. Sayre & Converse, 3 Ala. Rep. 458 ; Cheatham v. Young, 5 Ala. 353 ; Chitty on Bills, 9 Am. ed. 111 ; 2 Dana, 414 ; Bayley on Bills, 237.

The same doctrine applies in cases of usury. Warren v. Crabtree, 1 Greenl. Rep. 167 ; Churchill v. Sutler, 4 Mass. 156 ; Muskgrove v. Gibbs, 1 Dall. 216 ; Munn v. Commission Co. 15 Johns. Rep, 44 ; Ib. 355. See also Tuthill v. Saltmarsh, at the last term, and Saltmarsh v. P. & M. Bank, at this term. Also, Metcalfe v. Watkins, 1 Por. R. 57.

There is nothing in the record from which it can be inferred that the plaintiff took the note by reason of any representations made by Nicks. He received it, it is said, on the faith of the indorsement. As the indorsement, though placed on the note before the gaming, could have no vitali-

ty until the note was negotiated by the indorser, it follows that being *void* by the statute, the plaintiff, though a *bona fide* holder takes nothing under it, as against the indorser.

Judgment of the circuit court affirmed.