# HOLT & CHAMBERS *vs.* BANCROFT, BETTS & MARSHALL.

[BILL IN EQUITY BY CREDITOR TO SET ASIDE OR AVOID FRAUDULENT DEED.]

1. *General assignment under Code.*—Under section 1556 of the Code, a deed of trust, executed by an insolvent mercantile firm, to secure a particular creditor, will be held part and parcel of a general assignment, for the benefit of all their creditors, executed by them eight days afterwards, when it appears that the intention to make the general assignment existed at the time the deed was executed, and that the same trustee is appointed in both. (RICE, C. J., *dissenting.*)

2. *Who is purchaser for valuable consideration.*—If a creditor takes a deed of trust to secure an existing debt, or to indemnify himself against an existing lia-

bility, he is not entitled to protection as a purchaser for valuable consideration.

3. *When creditor may come into equity without exhausting legal remedy.*—A creditor with a lien may come into equity, to remove an obstacle in his way, or a cloud over the title of the property, without first exhausting his legal remedy.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. WADE KEYES.

THE material facts of this case are these : Holt & Chambers, a mercantile firm in the city of Montgomery, becoming insolvent, and having suits for large amounts pending against them, which were soon afterwards reduced to judgment, executed a deed of trust on the 9th May, 1854, on about one third of their stock of goods, to David Owen as trustee, to secure Alexander Chambers on a debt which they then owed him, and against liability on certain accommodation endorsements for them. At the time this conveyance was executed, said Holt & Chambers intended to make a general assignment of all their effects, for the benefit of all their creditors, and so informed the trustee; but this intention was not communicated to Alexander Chambers. In pursuance of this intention, on the 17th May, 1854, they conveyed all their effects, including their residuary interest in the goods covered by the first deed, to said Owen as trustee, for the equal benefit of all their creditors.

Bancroft, Betts & Marshall, who were creditors of said Holt & Chambers at the time of the execution of these conveyances, and who obtained judgment against them a few days afterwards, filed their bill in equity, before obtaining a return of "no property" on an execution, against Holt & Chambers, Owen, and Alexander Chambers; alleging, in addition to the facts above stated, that said conveyances were executed to hinder and delay the creditors of the grantors, and were therefore fraudulent and void, or that the first deed was intended by them to give a preference to said Alexander Chambers over their other creditors, and was therefore violative of the provisions of section 1556 of the Code; praying that the two deeds

Holt & Chambers v. Bancroft, Betts & Marshall.

might be declared fraudulent and void as against them, or that the first might be declared part and parcel of the second,—that the trustee might be enjoined from paying over any of the moneys collected by him, and compelled to account for and distribute the entire fund; and adding the prayer for general relief.

Alexander Chambers answered the bill, setting up and insisting on the validity of the deed for his benefit; denying that there was any fraud, either in fact or in law, in its execution; and alleging that he was a *bona-fide* creditor at the time of the execution of his deed, and entitled to protection as a purchaser for valuable consideration.

The partners composing the firm of Holt & Chambers were examined as witnesses on behalf of their co-defendants, Owen and Alexander Chambers, and testify to the facts, that they were insolvent when said conveyances were executed; that they intended, when they executed the first deed, to execute a general assignment soon afterwards; and that this intention was communicated by them to Owen, but not to Alexander Chambers.

On final hearing, on bill, answers and proof, the chancellor held that the first deed must be considered a part of the general assignment, and rendered a decree accordingly, which is now assigned as error.

WILLIAMS & COCKE, for the appellants.—1. The bill is without equity. In its primary aspect, it is a bill by creditors, who have not exhausted their legal remedies, to impeach an alleged fraudulent conveyance by their debtor. In its other aspect, it is a bill against the trustee, for the execution of a trust, in which it is not alleged that the trustee is guilty of any negligence or misconduct, or that he refuses to execute the trust, or that the fund is in danger, or that any other ground for equitable interference exists; but which distinctly avers that the trustee is faithfully discharging his duties as such. In neither aspect can such a bill be maintained.

2. The bill makes no charge of fraud against any of the defendants, except Holt & Chambers, the debtors; which is not sufficient to entitle the complainants to the relief

which they seek as to the deed for the benefit of Alexander Chambers.—Governor v. Campbell, 17 Ala. 566.

3. A general assignment imports a conveyance of all the debtor's property; while a partial assignment is a conveyance of a portion only.—Burrill on Assignments, 82, 93.

4. Section 1556 of the Code was not intended to prohibit a debtor from executing, in good faith, a mortgage, deed of trust, or partial assignment, embracing only a portion of his property, for the benefit of one or more of his creditors. The preceding section (1555) repels such an idea, and impliedly recognizes his right to do so. The statute is in derogation of the common law, and of natural right, and must be strictly construed.—27 Ala. 326. Its design was not to impose an absolute inhibition on the debtor to prefer one creditor, but simply to prevent a preference being given in a particular mode, that is, by a general assignment. It could not be contended that the statute would embrace a preference given by a transfer of collaterals, or by an absolute payment, or a sale of property, or a confession of judgment; yet a preference might be given by each of these modes. The statute does not pronounce a general assignment, containing provision for a preference, fraudulent and void; but merely provides what shall be its legal effect.—10 Conn. 281; 1 Kelly, 157, 176; Burrill on Assignments, 118.

5. It will be discovered, on a close examination of the bill, that the only traversable averment in reference to this matter, and that on which the gist of the bill depends, is, "that the Code prohibits the making of an assignment which prefers one creditor to another; and to avoid this, and defeat the power of the law, and to secure said Alexander Chambers on his liabilities, and to prefer him as a creditor in violation of law, the said Holt & Chambers executed the two conveyances"; "and this being done, and having been agreed on previously for the purpose of evading and violating the law as aforesaid, to prefer the said Chambers over other creditors, both instruments are thereby rendered fraudulent and void." The latter part of this allegation, it is insisted, is but the averment of a

legal conclusion, and contains no averment of fact. The words, "and this being done," are but recitation and argument, from which the legal conclusion is deduced, and do not constitute an averment of fact. The only issue, then, presented by the entire allegation taken together, is, whether Holt & Chambers executed the two conveyances "to avoid and defeat the power of the law, and to secure said Alexander Chambers on his liabilities, and to prefer him as a creditor in violation of law." There is no allegation that Holt & Chambers, when they made the first deed, had it in contemplation, or had intended and determined, or had agreed with the trustee and said Chambers, to make the second deed; nor is there any allegation that Owen and Chambers, or either of them, had notice of such purpose. The allegation made is denied by the answers, and is disproved; consequently, the proof of notice to Owen is outside of the allegation, and cannot be regarded.—Story's Eq. Pl. § 28; 1 Dan. Ch. Pr. 411.

But, if it be conceded that the bill charges an agreement "to evade and violate the law as aforesaid," it cannot be construed to mean that either Owen or Alexander Chambers was a party to such agreement. The context leads to the conclusion that Holt & Chambers made the agreement as between themselves. But, be this as it may, the agreement is denied and disproved. If, however, Holt & Chambers made the first deed in contemplation of the second, and with the intention of afterwards making the second; still, it is insisted, their fraud alone cannot avoid the first deed, which had become operative before the consummation of the fraudulent intent, and formed no inducement to the execution of the second deed.—Governor v. Campbell, *supra.* Nor, if the trustee had notice of such intent, would the deed be thereby avoided as to Alexander Chambers, who had no notice of such intent, and whose rights under the first deed had attached before the second was made. An intent to do an illegal thing amounts to nothing, until the thing is done; and if rights have intermediately vested, the illegal act cannot so retroact, by reference to the previous intent, as to divest those rights.

WATTS, JUDGE & JACKSON, and GOLDTHWAITE & SEMPLE, *contra.*—1. It is proved that Holt & Chambers had determined, before the execution of the deed of 9th May, to make the assignment of the 17th May, and so informed the trustee at the time of making the first deed. The two instruments must be regarded, in law, as one and the same.—Perry v. Holden, 22 Pick. 269. The making of the first was evidently intended to evade the provisions of section 1556 of the Code. That deed is nothing more than a fraud upon the statute. If such a transaction can be tolerated, the statute is wholly nugatory. If such construction can be given to the statute, it accomplishes nothing. All that any debtor need do, to give preferences, is to make a partial assignment one day, for the benefit of a few select creditors, and another the next day, for the benefit of a less favored class; and so on, *ad libitum.* This statute was evidently intended to get rid of a long line of judicial decisions, in our own courts and others, which had been condemned on principle by the most learned jurists in the country, but by which they felt bound according to the doctrine of *stare decisis.* It was called for by the opinions of the most eminent judges, and demanded by the best interests of society. If it can be thus evaded, it is a mere mockery, and had better never been enacted.

2. In order to constitute a fraud in law, it not necessary that the grantors, trustee and beneficiaries should all participate in the intention to evade the law. Under a similar statute in Ohio, it has been held, that the intent of the grantor alone is sufficient to constitute a fraud in law.—Harshman v. Lowe, 9 Ohio, 92 ; Wilcox v. Kellogg, 11 Ohio, 394 ; Mitchell v. Gazzam, 12 Ohio, 315.

3. The deed to Alexander Chambers being fraudulent in law, his assent to its provisions cannot be implied. Ashley's Adm'r v. Robinson, 29 Ala. 112.

4. At the time of the execution of the deed for the benefit of said Chambers, the grantors were insolvent; and since the deed reserves the surplus to them, it is fraudulent.—4 Comstock, 211 ; 2 Comstock, 365.

5. This conveyance itself, it must be observed, is not a

mortgage, nor is it an assignment to the creditor himself, but to a trustee. Moreover, it gives a preference to Burr Chambers on the two notes to him.

WALKER, J.—It is conceded that the second deed executed by Holt & Chambers, dated the 17th May, 1854, was a conveyance of all their property, including that embraced in the first deed, to secure their creditors generally. This conveyance has been properly treated, by the counsel on both sides, as a general assignment. Burrill on Assignments, 82; Dana v. Lull, 17 Vermont, 390.

Section 1556 of the Code is in the following words: "Every general assignment made by a debtor, by which a preference, or priority of payment, is given to one or more creditors over the remaining creditors of the grantor, shall be and enure to the benefit of all the creditors of the grantor equally." If the former of these two deeds was executed in contemplation of the latter, and with the intention to execute the latter; and if the two deeds, having the same trustee in each, were separated by a space of eight days, for the purpose of evading the prohibition of a preference contained in the section of the Code above quoted, the law will regard the two deeds as together making a general assignment, and will take away from the creditor the preference provided for him. If this proposition can be maintained, it must control the decision of the case; and we therefore proceed to the examination of the arguments and authorities, by which, in our judgment, it is vindicated.

The object of the statute was to prohibit all discrimination by a debtor, making a general assignment, in favor of any of his creditors. It does not aim to deny, and does not deny, to a debtor the power of securing a creditor's debt by a conveyance of a part of his property. The right of preferring creditors by partial assignments is untouched by the section of the Code quoted. It is not the preference of itself, but the preference as a feature of a general assignment, which the statute condemns. This construction of the statute is the only one which can be

adopted, without extending its meaning beyond the natural import of the language, and is supported by the decisions in other states in reference to similar laws. Blakey's Appeal, 7 Penn. State Reports, (Barr,) 449; Mer. Man. Co. v. Smith, 8 New Hamp. 347; Low v. Wyman, *ib.* 536; Danforth v. Denny, 5 Foster, 164; Tillou v. Britton, 4 Halsted, 120.

This opinion is not, therefore, intended to assert that the conveyance of Holt & Chambers for the benefit of Alexander Chambers, would, if it stood alone, be objectionable in the absence of fraud. The above named section of the Code leaves such a conveyance, when isolated and detached from the subsequent deed, outside of its purview; and the preference provided by the deed is not condemned, unless it is a component part of the general assignment.

It is a well established doctrine of the law, that two instruments of writing may so refer to, and be connected with each other, that they will be construed as one instrument, and such a construction will be placed upon them together, as their provisions would require if embraced in one instrument.—Sewall v. Henry, 9 Ala. 30; Love v. Jones, 4 Watts, 465; Bates v. Coe, 10 Conn. 280. This rule is one of construction. It is not necessary to invoke it in this argument. The proposition with which we set out, rests, not upon the idea that the two deeds can by a rule of construction be converted into one instrument, but upon the idea that a general assignment may be made up of two deeds, or of a succession of several distinct deeds. The question in this case is, what effect does the law assign to the two deeds, and according to what principle is their effect to be ascertained and measured. All that we assert is, that the first deed is but a part of a general assignment, completed by the execution of the second deed, as the first day's travel, although followed by some delay, is but a part of the continued journey. The law regards the two deeds as together composing a general assignment, because it will not permit that to be done indirectly which cannot be done directly. That which violates the policy of a statute is as much con-

demned as if it violated the letter. The law no more tolerates an evasion of a statute by artifice, than a palpable violation of it.—Sharp v. Teese, 4 Halsted, 352; Gulick v. Bailey, 5 Halst. 87; Gray's Ex'rs v. Brown, 22 Ala. 274; Tennison v. Martin, 13 Ala. 29; Hudson v. Milner, 12 Ala. 670; Bruce v. Lee, 4 Johns. 410. Neither an evasion nor a direct violation of the statute, prohibiting preferences in general assignments, can render absolutely void the deed or deeds by which the preference is attempted to be given, because the statute itself prescribes the effect of its violation. The assignment "shall be and enure to the benefit of all the creditors of the grantor equally." Visiting, therefore, the act of evading the statute with the consequence of a direct violation, we can only annul the preference, and place the beneficiary of the first deed on a footing with the other creditors.

It is evident that if a party, having determined to make a general assignment of all his property, can anticipate by making partial assignments for the benefit of particular friends, the law can be effectually set at defiance, and might as well never have been enacted. Its policy of preventing preferences in general assignments would be incapable of accomplishment; and the statute itself, inviting to its evasion by the facility of accomplishing the object, would be a dead letter. In truth, if one intending to make a conveyance of all his property, for the benefit of his creditors, convey a part on one day, a part the next, and so proceed until all his property is appropriated according to the original intention, precisely the same end is accomplished as if a general assignment had been made in the outset; and the law must visit the same penalty upon preferences in an assignment accomplished by these successive acts, as if it had been done by a single deed.

The act of Congress of 2d March, 1799, gives the United States a priority of right to the satisfaction of its debts, where its debtor has made a general assignment; at least, such is the effect of its language as construed by the courts.—United States v. Hooe, 3 Cranch, 73. In the case of Downing v. Kintzing, 2 Ser. & R. 326,

14

Tilghman, Ch. J., says, in reference to the effect under that act of a partial assignment, made *thirty-one days* in advance of a general assignment : "Now here has been a voluntary assignment of the whole estate, for the benefit of creditors ; and the only objection to it is, that it was not done at one time. The argument is, that the assignment to the plaintiff was but of part of the estate, and therefore not a case in which the United States had a preference. But the law is not to be evaded by an artifice of this kind. It was intended to secure the debt of the United States in all cases, where the debtor was insolvent, and made a voluntary assignment of all his property. Now what is the difference between the assignment of the whole to one person by one deed, and to several· persons by several deeds ? In both cases the whole is assigned." In the same case, Yeates, J., said : "I go farther, and adopt the language of one of the defendant's counsel, that no assignment can with legal propriety be deemed partial, when in the very instant of execution a general assignment is contemplated and intended, and that intention is shortly afterwards consummated. If such finesse could be practiced with success, nothing would be more easy than thus to elude the provisions of the act, and defeat the manifest intention of the legislature. I therefore consider these two assignments as parts of a premeditated plan, and view them as one entire transaction, so far as they respect the insolvency of Rhoads & Petit; and the preference of the United States founded thereon. *United together, they operate as a general divestment of their whole property, and were intended to produce that effect.*" The remaining judge of the Pennsylvania court assented to the principle of law asserted in the extracts above quoted, but differed from his brothers as to its applicability to the case.

The same decision was made in the supreme court of Louisiana, in the case of the United States v. Bank of the United States, 8 Robinson, 262, 415. Burrill, in his work on Assignments, (page 90,) in commenting upon the case last cited, says : "The rule governing these cases was laid down by the counsel for the plaintiffs in the following

terms, which seem to have met the approval of the court; that no matter how many instruments are employed to effect the same result, they all partake of the same character, and all should be considered as parts of the same whole. If the same causes which led to the execution of one of the instruments, partial when considered alone, continue to operate until every particle of the debtor's property is divested, the first instrument is to be coupled with those that follow, and the whole should be construed together."—See, also, Perry v. Holden, 22 Pick. 269; United States v. Clark, 1 Paine, 629–640.

The bill alleges, that the former deed was made for the purpose of avoiding the provisions of the Code in reference to general assignments, and to defeat the power of the law, and to prefer the beneficiary as a creditor in violation of the said law; and it also alleges, in effect, that the making of the second deed was agreed upon when the first was executed. Two witnesses, Holt and Chambers themselves, prove that Holt & Chambers intended, and had determined, to make the general assignment when the first was executed, and so informed the trustee at the time. It also appears that Holt & Chambers were at the time insolvent, and that the same trustee is appointed in both deeds. The question suggests itself, why was not the general assignment made at the time when the first deed was executed? Why was the general assignment, already determined upon postponed for a few days? The only one answer to these questions is, that in a general assignment no preference could be given, and it was desired to give such a preference. The pleadings and the evidence both show that the first deed was made in contemplation of, and with the intention to execute the second, and the second was accordingly executed in a few days; and upon the principles and authorities laid down, the preferences must be annulled, and the beneficiary in the first deed must be left to take his chance with the other creditors.

It is contended, that the beneficiary in the first deed cannot be affected by the illegal intent of the grantors, unless he participated in it. This ground is not available

to the beneficiary, unless he could be regarded a purchaser
for a valuable consideration ; and we cannot so regard
him, because the deed is made to secure a pre-existing
debt, and to indemnify him against a pre-existing surety-
ship.—Boyd v. Beck, at the present term; Stiles & Co. v.
Lightfoot, 26 Ala. 443; Andrews & Bro. v. McCoy, 8 Ala.
920; Bank of Mobile v. Hall, 6 Ala. 645; 4 Paige, 215;
10 Paige, 170; 1 Dev. Ch. 103; 4 Scam. 387; Rowen v.
Adams, 1 Sm. & Marsh. Ch. R. (Miss.) 45. The prefer-
ence given is assailed, not upon the ground that the deed
is made to defraud creditors, but it is a violation of the
law and therefore void. Such a preference certainly could
not be maintained in favor of one not a purchaser for
value ; whether it could in favor of such a purchaser is a
question outside of this case, and we do not decide it.
Manning v. Manning, 8 Ala. 38; Ivey v. Nicks, 14 Ala.
564. It is true this court has decided, that the fraudulent
intent of the grantor alone in a deed of trust cannot affect
the rights of beneficiaries who did not participate in that
intent ; and this decision has been made in reference to
deeds securing precedent debts.—Governor v. Campbell,
17 Ala. 571. But, in the case last cited, Chief-Justice
Dargan expressed very decidedly his disapprobation of
affording any other protection to the beneficiary of a
fraudulent deed, than that which belongs to the condition
of an innocent purchaser, but regarded the question as
settled by previous adjudications. While we are content,
with the learned judge who delivered that opinion, to
abide by the previous decisions of this court in reference
to the question of fraud, we are not willing by analogy to
carry the doctrine of those cases to other contracts, which
are in violation of the law; and it never has been carried to
such an extent, in this State or elsewhere. The distinction
of purchaser for and without valuable consideration, and
with and without notice, is founded upon principles of
justice, and has the sanction of ancient and modern law ;
and to depart from it would involve the law in inextricable
confusion.

The exhausting the remedy at law was not necessary
to enable the complainants to file the bill in this case.

Holt & Chambers v. Bancroft, Betts & Marshall.

The creditors were by the general assignment invested with a lien, and had therefore a right to file this bill for the purpose of removing an obstacle in the way of the execution of the trust for their benefit.—Pharis v. Leachman, 20 Ala. 662; Watts v. Gayle & Bower, *ib.* 823; P. & M. Bank v. Walker, 7 Ala. 926; Dargan v. Waring, 11 Ala. 988.

The decree of the court below is affirmed.

RICE, C. J.—The right of a debtor to give a preference to one or more of his creditors over others, existed under the common law. The Code has not destroyed that right, when it is exercised honestly by the execution of *a mortgage* or *deed of trust*, which is not made in trust for the use of the person making it, and which does not require any creditor to make any release, or to do any other act impairing his existing rights, before participating in, or receiving the securities therein provided for him.—Code, §§ 1287 to 1292, 1550, 1555.

When a debtor makes a *general assignment*, and *by such an instrument* gives a preference or priority of payment to one or more creditors over his other creditors, the Code does not pronounce *the instrument* fraudulent, or void; but annihilates *the preferences* given by it, and declares that the instrument "shall be and enure to the benefit of all the creditors of the grantor equally."—Code, § 1556.

The instruments known as *mortgages, deeds of trust,* and *general assignments,* are all mentioned in the Code, and evidently as distinct and different instruments.—See the sections of the Code above cited. The Code treats *preferences,* when contained in an instrument known as a *general assignment,* as inoperative under all circumstances, and as in effect expunged from the instrument; but it does not so treat preferences when found in any other kind of instrument, or when given in any other mode. I am not willing to go further, in impairing the common-law right of preference, than the legislature has gone.

The preference given to Alexander Chambers, which is assailed by the complainants in this case, was given by an instrument executed on the 9th May, 1854, and which

is evidently not a general assignment, but a deed of trust. But my brothers hold, that the preference is rendered inoperative, merely by *the intent* which existed on the part of the debtors, at the time they executed the deed of trust, to make at a future time a general assignment, and by the actual making of a general assignment eight days after the execution of the deed of trust. I cannot agree to that.

The intent to make the general assignment was not an unlawful intent, nor an intent to do an unlawful act; for the debtors had the right to make a general assignment. The case then stands thus: the debtors have exercised their lawful right of preferring a creditor, by deed of trust; at the time they exercised that lawful right, they had the intent to exercise, on some future day, another lawful right, (to-wit, to make a general assignment,) and eight days afterwards they did exercise that lawful right; and the legal result, as announced by my brothers, is, that the first exercise of their lawful right is vitiated by the lawful intent to exercise another lawful right, and the actual exercise of that lawful right eight days afterwards ! !

I cannot believe the law to be so inconsistent with itself. I am unable to perceive how the exercise of two lawful rights, accompanied by no unlawful intent, can be considered an evasion of the law; or how the intent which may exist at the exercise of one lawful right, afterwards to exercise another lawful right, can be regarded as an intent to evade the law. The intent to evade the law is an unlawful intent, and, if it affects at all the instrument which it accompanies, it does not simply destroy the preference therein declared, but destroys the instrument *in toto*. The intent of the debtors to make a general assignment is, in no just sense, an unlawful intent. The making of a general assignment is an act legal in itself, and violative of no right of a creditor without a lien, unless it be made with an intent to delay, hinder, or defraud, or contains some provision other than for preferences contrary to law. The making of a deed of trust, giving a preference to a creditor, is also an act legal in itself, and

violative of no right of a creditor without a lien, unless it be made with an intent to delay, hinder, or defraud, or contains some provision contrary to law. And an act legal in itself, and which violates no right, cannot be defeated, in whole or in part, by an intent afterwards to do another act legal in itself.—Chatfield v. Wilson, in the supreme court of Vermont, reported in the July Number, 1857, of the American Law Register, page 528.

It seems to be conceded by my brothers, that the two instruments could not be considered as one, for any purpose, but for *the intent*, at the time of the execution of the first, to execute the second. That intent does not appear in either instrument. The instruments are eight days apart, and neither refers to the other. The mere intent, at the making of the first, to make the second, (that intent being undisclosed in either,) cannot make the second instrument part of the first. They are separate and distinct, in fact, and in law. As to the first instrument, the deed of trust, there is nothing unlawful in the object, nothing unlawful in the means, nothing unlawful in the effect. I cannot, therefore, perceive on what the asserted invalidity of the preference given by it can rest, without laying it down broadly that several circumstances, each perfectly lawful, make up an unlawful act !

The authorities relied on by my brothers are not applicable to this case, because they are founded on statutes materially different from our Code.

One of the modes of preferring a creditor, recognized by the common law, and not destroyed by the Code, was by a confession of judgment by the debtor, in favor of the creditor. Suppose now that a debtor adopts that mode, and that, at the time he confesses the judgment, he has the intent to make a general assignment after execution has issued to the sheriff and a lien thereby acquired by the creditor; suppose, further, that after the lien has thus been acquired, the debtor does make the general assignment which he intended to make : in such a case, could any court hold, that the confessed judgment and execution thereon constituted part of the general assignment, or that the intent to make the general assignment de-

stroyed the preference and lien created by the confessed judgment and execution thereon? It seems to me that a court might as well hold that, as to hold that the deed of trust in this case was part of the general assignment executed eight days after the deed of trust was executed, or that the preference given by the deed of trust was destoyed by the subsequent general assignment.

There is no provision in the Code, or in any part of our law, which says, either in words or effect, that a preference given to a creditor, by a deed of trust executed by a debtor on one day, shall be inoperative, if the debtor, at the time of the execution, has the intent to make a general assignment on some subsequent day, and does on a subsequent day make such general assignment. And as there is no such provision in our law, I must dissent from the conclusion attained by my brothers.