# Crawford *et al.* v. Kirksey *et al.*

## Creditors' Bill in Equity.

1. *Creditors' bill with double aspect.* — A creditors' bill in equity may be filed with a double aspect; asking, in the alternative, to have two or more conveyances, which were executed by the debtor about the same time, for the benefit of certain preferred creditors, declared fraudulent and void, as having been made with intent

to hinder, delay, or defraud his other creditors (Rev. Code, § 1865), or construed as together constituting a general assignment (Rev. Code, § 1867), enuring to the benefit of all his creditors equally.

2. *Who is creditor under statute of frauds* (*Rev. Code*, § 1865). — One of several co-sureties, who has paid the debt in full to the creditor, is a creditor of a co-surety who has paid nothing, within the meaning of the statute of frauds (Rev. Code, §§ 1865, 1867), from the time of the payment.

3. *Weight and effect of answer as evidence.* — When the defendant's answer is offered as evidence by the complainant, it must be treated like other confessions : its admissions and denials must be taken together, and due weight must be accorded to the latter.

4. *Validity of conveyance by insolvent debtor to bonâ fide creditor.* — A debtor, though insolvent, may make an absolute conveyance of a part of his property to a *bonâ fide* creditor, in payment or satisfaction of his debt, if there is no intent to hinder, delay, or defraud his other creditors ; and a court of equity will not hold such conveyance to be fraudulent and void as against other creditors, on account of the admitted insolvency of the debtor, the relationship between him and the grantee, the pendency of suits against him for a large amount, the threatened institution of other suits, the failure to record the deed until after the commencement of the next ensuing term of the court in which the suits were pending, and the retention of possession by the debtor after the execution of the conveyance. These facts, though admittd in the answers, are mere *indicia* of fraud, and are not sufficient, of themselves, to overcome the positive denials of fraud, and the explanation of the retention of possession under a contract of renting, when the answers are offered in evidence by the complainant, and are not overturned in these particulars by other evidence.

5. *Validity of conveyance for indemnity of sureties against nominal liability.* — A deed of trust, executed by an insolvent debtor, to indemnify the sureties on his official bond as executor or administrator against their liability on the bond, is without consideration, and fraudulent and void as against creditors, if, at the time of its execution, their liability was merely nominal, and, on a subsequent final settlement, he was found to be not indebted to the estate, and was discharged.

APPEAL from the Chancery Court of Greene.

Heard before the Hon. A. W. DILLARD.

The opinion in this case was delivered at the June term, 1872. Nothing but the opinion has come to the hands of the reporter.

MORGAN & JOLLY and WEBB & JONES, for the appellants.

T. REAVIS, *contra.*

PETERS, J. — This is a suit in chancery, commenced by Wiley Coleman and Foster M. Kirksey, as complainants, against Samuel L. Creswell, James Crawford, and William P. Webb, as defendants, in the court below. The purpose of the suit is, to have certain deeds, mentioned in the bill, declared void, or to have them declared " a general assignment " for the benefit of all the creditors of said Creswell, among whom the complainants allege they are such creditors. The court below declared the deeds void; and Crawford, in behalf of himself and the other defendants, appeals to this court, and here assigns the decree below as error.

The original bill in this cause will be considered, in connection with the amended bill, as forming but one case; for such

[Crawford v. Kirksey.]

is really the issue presented by the pleadings. The suit, then, consists in an application to a court of chancery, to have two conveyances — the one executed on the 4th day of October, 1866, by Creswell to James Crawford, and the other executed on the 5th day of October, following, in the same year, to said Crawford and W. P. Webb — declared void, because they were made to hinder and delay the creditors of said Creswell, in the collection of their debts ; or to have said conveyances taken together as one transaction, and declared a general assignment of all the maker's property, both real and personal, in favor of all his creditors. The bill is filed as " a creditors' bill," by Kirksey and Coleman, as creditors of Creswell, on behalf of themselves and the other creditors. The bill and the amended bill are each separately demurred to, and the objections in each demurrer are, in substance, the same ; or, at least, after the amendment, which removed some of the objections to the original bill, the causes of demurrer were reduced to the same points of objection. These are : that the bill, as amended, is without equity, and that it is framed with a double aspect ; and that the alternative averments do not admit of the same relief ; or, in other words, that the statements of the bill mingle two cases which are repugnant and incongruous in the same suit.

There can be no doubt that a creditor without a lien may file a bill in chancery, to subject to the payment of his debt any property which has been fraudulently transferred, or attempted to be fraudulently transferred, by his debtor. This is the statute law of this State. Rev. Code, § 3446. It is equally well settled, that, when there is a general assignment, or such an one as the law clothes with the force and attributes of a general assignment in favor of creditors, such an assignment invests the creditors with a lien, which enables them, or any one of them, for himself and all others who may join in bearing the burdens of the suit, and who choose to come in and prove their debts upon a reference to the master, to file a bill in chancery to compel an execution of the trust, thus created for their benefit. Such a bill is strictly a " creditors' bill " under our statute. Rev. Code, § 1867 ; *Holt & Chambers* v. *Bancroft, Betts & Marshall*, 30 Ala. 193, and cases cited. In this latter case, the complainants were judgment creditors ; but the bill did not show that executions on their judgments had been returned " No property found." In a case similar to this, this court has said, " The exhausting the remedy at law was not necessary to enable the complainants to file the bill in this case. The creditors were, by the general assignment, invested with a lien, and had, therefore, a right to file this bill for the purpose of removing an obstacle in the way of the execution of the trust for their benefit." 30 Ala. 193, 204, 205,

[Crawford v. Kirksey.]

*supra.* The statute gives to the assignment for the benefit of preferred creditors the same effect as a general assignment, and the remedies to enforce rights under the former should be the same as under the latter. The reasons in the one case are the same as in the other; and where there is no statute, like reason makes like law. The only difference is, that one is a lien created by the parties, while the other is a lien created by law; but both equally grow out of the contract, and the rights, when established, are the same. The making of such a conveyance creates a trust under our statute, and, as such, there is jurisdiction in equity to enforce the proper administration of the trust. In such a case, chancery has original and plenary jurisdiction. 1 Story's Eq. §§ 29, 49. Then, as to the subject-matter of the bill as amended, I think there can be no reasonable doubt of its equity. Under one branch of the statute, the remedy in chancery is expressly given, and the remedy under the other has always been in courts of equity. Rev. Code, §§ 3446; 30 Ala. 193, *supra; Longmire* v. *Goode & Ulrick,* 38 Ala. 577; *Warren* v. *Lee & Larkins,* 32 Ala. 440.

The demurrer in this case is a general demurrer to the equity of the bill. Such a demurrer, if upon any part of the bill the complainants are entitled to relief, is bad. Welford's Eq. Pl. p. 265, marg.; *Jones* v. *Frost,* 2 Madd. 7. But the grounds of demurrer seem to be aimed at the frame of the bill in one particular aspect of its statements. In one aspect of the bill, there is no doubt of its equity; that is, as a bill to set aside a fraudulent conveyance (Rev. Code, § 3446), yet the demurrer is general. Nevertheless, it is aimed at but one aspect of the bill. It is, in effect, a demurrer to a portion of the bill. Such a demurrer is bad. Welford's Eq. Pl. p. 265, marg.; *Metcalfe* v. *Brown,* 5 Price, 563; *Edsell* v. *Buchanan,* 2 Vesey, 83. Such a pleading cannot be treated as a demurrer to a portion of the bill, because it assails the whole. Mitf. by Jer. 108; 1 Smith's Ch. Pr. 201, 205; 2 Dan. Ch. Pr. 71, marg.

Where there is doubt as to the title to relief, the complainant may frame his bill with a double aspect. Welf. Eq. Pl. 107; 2 Atk. 324, 335, *Bennett* v. *Vade;* 1 Dan. Ch. Pr. 496, marg. And this court has declared, that "it is certainly permissible for a complainant to aver in his bill, that either one or the other of two alternative statements is true. Undoubtedly it is so, when each of the statements entitles the party to the same relief." *Rives, Battle & Co.* v. *Walthall's Ex'rs,* 38 Ala. 329, 332; *Shields* v. *Barron,* 17 How. 130, 144. Here, the system of assignments was the same in both aspects of the bill. It cannot be said, then, to view them in one aspect makes one case, and to view them in another makes another and a different case. The relief sought is the condemnation of the prop-

[Crawford v. Kirksey.]

erty conveyed, to the satisfaction of the debts of the creditors of the maker, who choose to come in and prove their debts, and bear their portion of the burdens of the suit. In the one case, the assignments would be set aside as fraudulent and void, and the property conveyed would be held subject to the debts of the creditors; in the other case, the assignments would be held as a general appropriation of the property conveyed, for the use of all the creditors, in like manner as would be done in the first case. There could be no confusion in such a proceeding; but very great injustice, and the perplexity of a double litigation, might be occasioned, if it were not allowed. These are ends that the jurisdiction in chancery particularly seeks to avoid. The enlargement of the remedy given by the statutes brought into question in this suit, the success of the remedy, and the avoidance of a multiplicity of suits in such a case, justify the practice sanctioned by the disallowance of the demurrers. There was, then, no error in overruling them.

2. The next questions presented on the record are: 1st, Do the complainants show themselves to be *bonâ fide* creditors of Creswell? and, 2d, Do the proofs show the conveyances to Crawford, and to Crawford and Webb, to be fraudulent and void, as in struments " made with intent to hinder, delay, or defraud creditors, purchasers, or other persons, of their lawful suits, damages, forfeitures, debts, or demands?" Rev. Code, § 1865. These questions bring up the merits of the decree in the court below.

It is not denied in the answers of the defendants, that the complainants were the co-sureties, with Creswell, of Coleman on the note to Dew for $40,000. Nor is it denied that the several payments alleged to have been made by said complainants severally, as stated in the bill, were so made, as averred. Nor is the final discharge of the note, by the compromise with complainants and the administrator of Dew, disproved. It is not pretended that the defendant, Creswell, ever made any payments on said note. These facts being admitted, the denials in the answers of Creswell and Crawford that Creswell is liable for his *pro rata* share of the amounts thus paid, and that the complainants are not creditors of Creswell, are mere evasions. Such testimony was properly disregarded by the chancellor. These denials must have been made upon a misconception, both of the facts of the case, and of the law. It is perfectly well settled, that, " when two or more persons jointly become sureties for another, on a note for the payment of money, each surety becomes liable to the other, to pay his share of the liability, in the event the principal fails to do so." *Stallworth* v. *Preslar*, 34 Ala. 505; *Pait* v. *Pait*, 19 Ala. 713; *White* v. *Banks*, 21 Ala. 705; *Martin* v. *Baldwin*, 7 Ala. 923; *Taylor*

[Crawford v. Kirksey.]

v. *Morrison*, 26 Ala. 728. " In case the principal fails to pay, and one of several sureties is forced by suit to pay the debt, there accrues to the surety so paying, *at the time of the payment*, a right of action against his co-surety for contribution. The surety sued need not wait until the money is forced out of him by execution." 34 Ala. 505, 509, *supra*, and cases there cited. Upon these authorities, and the proofs and admissions of the answers, I feel compelled to admit the complainants to the standing of *bonâ fide* creditors of Creswell, at the time that both the deeds above mentioned bear date. Their liability was then fixed, and they were injuriously affected by these deeds, if they were fraudulent. They were calculated to hinder and delay them " of their lawful suits, damages, forfeitures, debts, or demands." This the law, as above shown, forbids, if they were made with this intent.

3–4. But, were the deeds, or either of them, fraudulent and void ? Or was it their intent to hinder, delay, or defraud creditors ? The next question to be considered, then, is whether the deeds to Creswell, and to Creswell and Webb, or either of them, was void for fraud, actual or constructive, — at common law, or under the statute.

Under the first deed, executed by Creswell to Crawford, the question arises as to the power of the owner, under certain circumstances, to transfer his property to his creditor to pay his debt. This depends upon what is meant by the one's right of property. Blackstone defines the right of property to be, " that sole and despotic dominion, which one man claims and exercises over the external things of the world, in total exclusion of the right of any other individual in the universe." 2 Bla. Com. p. (2). Treating of the same subject, Chancellor Kent declares, that " the exclusive right of using and transferring property follows, as a natural consequence, from the perception and admission of the right itself." 2 Kent, p. [320]. And discussing the same right, in *Sexton* v. *Wheaton*, Chief Justice MARSHALL lays down the rule of law in words of similar import. He says : " It would seem to be a consequence of the absolute power which a man possesses over his own property, that he may make any disposition of it, which does not interfere with the existing rights of others ; and such disposition, if it be fair and real, will be valid. The limitations on this power are those only which are prescribed by law." *Sexton* v. *Wheaton*, 8 Wheat. 229, 242. Then, the owner of property may dispose of it as he pleases, under the limitations imposed by law. *Andrews & Bros.* v. *Jones*, 10 Ala. 400. In this case, the deed made by Creswell to Crawford, on the 4th day of October, 1866, was an absolute conveyance of the property mentioned therein, in payment of a subsisting debt. It

was, in fact, a sale of the property mentioned in the deed, for a valuable consideration. On the face of the instrument, by which the title was transferred, there is nothing which shows that it was a contract forbidden by law. It is such a sale of the property as the owner had a right to make, if he acted without fraud. Our statute declares, that "All conveyances, or assignments, in writing, or otherwise, of any estate or interest in real or personal property, and every charge upon the same, made with intent to hinder, delay, or defraud creditors, purchasers, or other persons, of their lawful suits, damages, forfeitures, debts, or demands ; and every bond or other evidence of debt given, suit commenced, decree or judgment suffered, with the like intent, against the persons who are or may be so hindered, delayed, or defrauded, their heirs, personal representatives, and assigns, are void." Rev. Code, § 1865.

It is insisted by the appellants, that the deed above referred to was not made in violation of this statute, and that the proofs in the court below are insufficient to sustain the decree of the learned chancellor, which declared it void, in the court below. There was no evidence taken and submitted on the hearing in the chancery court, by either party. The case was heard on the bill as amended, and exhibits, the answers, and exhibits to the answers, and agreement of counsel. The decree, then, rests wholly upon the admissions made in the pleadings ; and the question presented, in this aspect of the case, in this court, is, Do these admissions support the chancellor's decree ? The allegation of the bill, that the deed was fraudulently made, is directly and positively denied in the answers ; but the circumstances which surrounded the parties to the deed at the date of its execution are admitted. Were these circumstances, as admitted, *primâ facie* and *sufficient* evidence of fraud ? If they were, then the decree should be sustained. If they were not, then it must be abandoned. These circumstances are recited in the complainants' bill in the following words : "At the time said deed purports to have been executed, said Samuel L. Creswell was insolvent ; said James Crawford was his brother-in-law ; there were suits pending, and others threatened against him, in the circuit court of said county, for large amounts ; said circuit court was on the eve of being held ; and said deed was not recorded until said court was actually in session. The amount recited therein, as the consideration thereof, was not in fact paid, nor did the said Creswell really owe said Crawford, in good faith that amount ; and the said Creswell has remained in the possession and use of all, or the greater portion, of the property conveyed by said deed, from the day it was executed to the present time. If the consideration recited in said deed was really paid, or if the said Creswell was really indebted to

said Crawford, to the amount recited as the consideration, said deed was made upon a secret trust, agreed upon between them, that said Creswell should redeem, or repurchase, the property conveyed, on some terms or other, or should remain in possession or use of said property, on some terms or other, for his own benefit ; or upon some other secret trust, known to them, but unknown to your orators. Your orators therefore charge, that said deed was made to hinder, delay, and defraud the creditors of said Samuel L. Creswell, and is void as to your orators. A copy of said deed, marked ' Exhibit B,' is hereto attached as part of this bill."

The deed, thus introduced into the pleadings, shows in the face of the same, that its consideration was $48,721.48 ; and at the foot of the deed, thus made an exhibit, is this memorandum, to wit : " October 4th, 1866. The condition of this deed as expressed in figures, to wit, $48,721.48, paid by James Crawford's receipt to said Creswell for that amount of money, due by said Creswell's notes and accounts rendered him to date ;" which is signed by " Samuel L. Creswell and Jas. Crawford." The deed, with the memorandum thus set out, is admitted in the answers. The insolvency, the relationship of the parties, the pendency of suits, and that others were threatened, and that the circuit court was on the eve of being held, and that said deed was not recorded until said court was in session, are also admitted in the answers. But it is denied that the said Creswell did not owe, in good faith, the debt mentioned in said memorandum. It is also admitted, that Creswell retained possession of the property conveyed in said deed during the years charged in said bill, but only as the bailee of said Crawford, during the balance of the year 1866, after the deed bears date, and during the years 1867 and 1868, as the lessee of Crawford, at a price stipulated in money for rent, which amount of rent was secured by a mortgage duly recorded. But it is denied that said deed was made upon any secret trust whatever, or upon any understanding that Creswell should redeem or repurchase the property conveyed, or that he should remain in possession or use of said property for his own benefit ; and it is also denied that said deed was made to hinder, delay, or defraud the creditors of said Creswell, or that said deed was void.

The register's note of the complainant's testimony shows that they offered, as a part of their testimony " in chief " : " 1st. The original bill and amended bill, and exhibits thereto. 2d. The answers of the defendants." The answers of the defendants are but the confessions of the defendants. If the complainants choose to rely upon these confessions, they must be taken, as other confessions, altogether as a whole. The

court must look to the denials, as well as the admissions, con-
tained in the answers. This leaves only the evidence of the
admissions in proof of the insolvency, the relationship, the
pendency of the suits, and the time of the record of the deed,
to overturn its good faith. Insolvency does not deprive the
owner of the power to sell his property to pay his debts,
whether to one or more of his creditors. *Robinson* v. *Ripley
& Smith, ex'rs,* 2 Stew. 86 ; *Stover* v. *Harrington,* 7 Ala. 142.
The same may be said of the relationship between the grantor
and the grantee in the deed. This does not destroy the power
to sell. *Montgomery's Ex'rs* v. *Kirksey,* 26 Ala. 172. Nor
does the pendency of suits against the maker of the deed have
this effect. *Williams & Battle* v. *Jones,* 2 Ala. 314. But all
these may be looked to as indications of intent to hinder, de-
lay, or defraud the maker's creditors. The other indications
of fraud are explained and denied in the answers, which were
offered as a part of the complainant's testimony. There is
no testimony to overturn these denials. The case, then, stands
upon these isolated admissions of insolvency, relationship, and
the pendency of suits. It has been shown that these circum-
stances alone would not be sufficient, without more, to vitiate
the deed. The retention of the possession after the sale is ex-
plained in the answers, and shown to be the possession of a
bailee and a lessee. Such possession, when so explained, is
not inconsistent with good faith. *Mayer* v. *Clark,* 40 Ala. 259,
269, and cases there cited. The other circumstances relied
upon to establish fraud, such as unusual particularity, and the
delay to record the deed until after the court was in session,
though calculated to excite suspicion, are of very little force.
*Terrell* v. *Green,* 11 Ala. 207. They are counterbalanced by
the assertion of good faith alleged in the answers. Fraud
is a fact. It must be proven. Courts will not strive to force
conclusions of fraud. *Ala. Life Ins. & Trust Co.* v. *Pettway,*
24 Ala. 544 ; *Smith's Heirs* v. *Branch Bank of Mobile,* 21 Ala.
125. This leads me to the conclusion, that the decree of the
learned chancellor in the court below cannot be sustained,
without wholly disregarding the evidence for the appellants
furnished by their answers, and their positive denial of all fraud
alleged in the bill ; which denial is not neutralized by any proof
outside the admissions of the answers. The court below, there-
fore, erred in declaring the deed of the 4th of October, 1866,
executed by Creswell to Crawford, fraudulent and void, upon
the evidence afforded by the pleadings. From this evidence I
think it was a valid sale ; and if it was a valid sale, it could
not be a part of a general assignment for the benefit of all the
maker's creditors. Rev. Code, § 1867. The failure of Mrs.
Creswell to sign this deed was of no consequence. Her signa-

[Jones's Administrator *v.* Ray.]

ture could not have extended beyond a relinquishment of her dower, unless there was a special covenant by her expressing her intention to bind her separate estate. Rev. Code, §§ 1629, 1826. Such relinquishment is wholly voluntary with her.

5. The deed of the 5th of October, 1866, made by Creswell to Crawford and Webb, as his securities on his bonds as the executor of the last will and testament of Robert Creswell, deceased, and as the administrator of the estate of Mary Creswell, deceased, stands upon a different footing. This is a deed in trust. From Webb's answer it appears that the liabilities mentioned in this conveyance were merely nominal, and that upon a final settlement of the estates therein named, the said Creswell was discharged from liability for further accounting. This discharged the sureties of his bonds. This seems to have been the condition of these estates when this deed was executed. There was, then, really no sufficient consideration to support it. The liability of Crawford and Webb was merely nominal; and it proved upon the final settlement of the estates of Robert and Mary Creswell to be wholly null. The deed was properly declared void, as one destitute of any sufficient consideration to support it. Such a conveyance must not only be made in good faith, but upon a consideration deemed valuable in law. *Frow* v. *Downman*, 11 Ala. 880; *Bowman* v. *Draughan*, 3 Stew. 243; *Br. Bk. at Decatur* v. *Kinsey*, 5 Ala. 9; *McCown* v. *Wood*, 4 Ala. 258. The decree of the court below setting aside this deed was free from error.

There are many other questions raised on the assignments of error, and in the briefs and arguments of learned counsel, which are not noticed in this opinion, as they are not likely again to arise upon the present state of the evidence.

The decree of the court below is reversed, and the cause is remanded, for further proceedings in the court below, in conformity with the law as indicated in this opinion. The appellees, Kirksey and Coleman, will pay the costs of this appeal in this court, and in the court below.